SAUNDERS, Judge.
This is an appeal brought by defendants-appellants, Shirley Reynaud Simpson, Gail Reynaud Rhea, and Carol Reynaud Lar-gent, from a judgment of the trial court granting plaintiffs-appellees’, Hilda Rey-naud Vallette, Sue Reynaud Bueche, Lou Reynaud Witsell, and Ellis Joseph Rey-naud, Jr., petition to annul and set aside the purported testament of Ellis J. Rey-naud, Sr. dated December 27, 1989, recalling and vacating the order of probate of said will and recognizing the testament dated August 21, 1987, as the true Last Will and Testament of Ellis J. Reynaud, Sr., deceased.
• Defendants-appellants allege that the trial court erred in finding that the plaintiffs-appellees proved, by clear and convincing evidence, that Ellis J. Reynaud, Sr. was without testamentary capacity at the time he executed his will on December 27, 1989. We find no error in the judgment of the trial court and, thus, we affirm.
FACTS
Ellis J. Reynaud, Sr. was married to Hilda Thomas Reynaud in 1923 and they had seven (7) children, the plaintiffs and defendants in this action. On August 21, 1987, Ellis and Hilda each executed a Last Will and Testament which divided their property equally between their seven (7) children. Subsequently, on December 27, 1989, Ellis Reynaud, Sr. executed a new Last Will and Testament which left the majority of his property to the three (3) younger children and the forced portion to the four (4) older children. Hilda Reynaud died January 23, 1991, and the will executed by her dated August 21, 1987, was offered for probate. By judgment of possession dated December 17, 1991, the seven (7) children of Hilda Reynaud were sent into possession" of all properties comprising the succession of Hilda Reynaud, subject to the usufruct in favor of their father, Ellis J. Reynaud, Sr.
Ellis J. Reynaud, Sr. died on March 6, 1991. Shirley, Gail and Carol, the named *629 co-executrixes, offered the Last Will and Testament executed on December 27, 1989, for probate. This will was probated on October 29, 1991, and defendants-appellants were confirmed as joint-executrixes of the estate. On December 11, 1991, the four (4) oldest children, namely, Hilda, Ellis J., Jr. (E.J.), Sue, and Lou filed a petition to annul the December 27, 1989, will alleging that Ellis J. Reynaud, Sr. lacked the mental capacity to understand the nature and appreciate the effect of the December 27, 1989, Last Will and Testament.
After trial on the merits, the trial court set aside the testament executed by Ellis J. Reynaud, Sr. on December 27, 1989, and recalled and vacated the order of probate of this testament and ordered the probate of the Last Will and Testament executed by Ellis J. Reynaud, Sr. on August 21, 1987. This appeal followed.
DISCUSSION
The trial court, in its reasons for judgment, correctly set forth the law as to testamentary capacity, as follows:
“This will was signed on December 27, 1989. At that time, testamentary capacity was governed by Article 1475 of the Civil Code. That Article provided, and I quote, ‘to make a donation inter vivos or mortis causes, [sic] one must be of sound mind’. That was the total of Article 1475. That law was amended by the legislature in 1991. It was replaced by Article 1477 which provides, and again I quote, ‘to have capacity to make a donation inter vivos or mortis causea, [sic] a person must also be able to comprehend generally the nature and consequences of the disposition that he is making’. In the event that it becomes an issue, it is the ruling of the Court that this change is substantive in nature and that the Court is governed by Article 1475 as it existed in 1989. The law presumes testamentary capacity, that means that we start off with the basic assumption that every person has the capacity to make a will, that is the presumption of testamentary capacity. Article 1482, which was also enacted in 1991, provides that, ‘a person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos or executed the testament’. Although this article is new, it simply codifies the jurisprudential law which was in effect since the case of The Succession of Lyons, 452 So2d 1161, decided by The Louisiana Supreme Court in 1984 which changed the previous eviden-tiary requirement from ‘beyond a reasonable doubt’, to the less stringent, ‘clear and convincing evidence’. The issue then is whether the petitioners have proved, by clear and convincing evidence, that Mr. Reynaud was incapable of making a will on December 27, 1989. There is no longer a requirement of proof beyond a reasonable doubt.”
Appellants contend that the trial court erred in applying the provisions of LSA-C.C. art. 1475, which require that the testator must have been “of sound mind” rather than LSA-C.C. art. 1477, which now provides:
To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making.
The Revision Comment to new LSA-C.C. art. 1477, states at § (a):
(a) This Article is new and is intended to change the law. It purposefully rejects the phrase “of sound mind” in order to avoid the jurisprudence regarding the usage of that phrase in former Civil Code Article 1475, and it sets forth criteria that are intentionally not limited to the prior jurisprudence. One reason for selecting a new test and rejecting the phrase “of sound mind” is specifically to overrule cases such as Succession of Buvens, 241 So.2d 89 (3 Cir., 1970), writs den., 257 La. 459, 242 So.2d 578 (La. 1971), which held in the case of a 40 year old retarded person with the mental age of 9 that there was no requirement of minimum mental condition to execute a will, and that chronological age was the sole criterion. See also Succession of Brugier, 83 So. 366 (La.1919)_
*630 Although the Comment states that the new Article is intended to change the law, the change appears to be mainly in the area of the testamentary capacity of a retarded person to execute a will. As early as 1955, the Louisiana Supreme Court in Succession of Moody, 227 La. 609, 80 So.2d 93 (La.1955), stated at 80 So.2d page 95:
“[T]he true test of testamentary capacity is whether at the time of making the will the testator is of sufficient mind to understand the nature of the testamentary acts and appreciate their effects.” (Citations omitted.)
In this case, although we will apply the old Article 1475, because the will was executed in 1989, the distinction between the two different standards for testamentary capacity would not affect our decision.
“The determination of testamentary capacity is a question of fact upon which the trial judge’s findings will not be disturbed unless clearly wrong.” Succession of Hamiter, 519 So.2d 341, 344 (La.App.2d Cir.), writ denied, 521 So.2d 1170 (La.1988). The trial court, in its reasons for judgment, summarized the expert witness testimony, as follows:
“I wish to state at the outset that the testimony of Dr. William Cloyd, a practicing psychiatrist I think with some 28 years of experience, standing alone does not meet the required burden of proof. It is my opinion that he was not capable of making a determination of lack of mental capacity so as to meet the clear and convincing evidence test based upon consulations [sic] which were about fourteen months after the will was made. His testimony is valuable in other ways, however, especially his diagnosis and the discussions of Mr. Reynaud’s depression disorder and dementia. Dr. Cloyd readily admitted that he did not know Mr. .Reynaud’s mental capacity at the time he made his will but based his opinion of lack of capacity on a number of factors. I interpret his testimony as being that it is more probable than not that mental capacity was lacking, but more probable than not does not meet the test of clear and convincing evidence. By concluding that his testimony would not, standing alone, meet the required burden of proof, I do not wish to take away from the value of his testimony. His description and analysis of the characteristics of Mr. Reynaud’s mental incapacity is very clear, particularly, the discussion of dementia. He pointed out on pages 22 and 23, that someone suffering from his condition, ‘may look or sound good, but there is a void’. He also testified that such a person often, ‘appears superficially to have all of their faculties’.
“Dr. Lester Ducote, a cardiologist, one of Mr. Reynaud’s treating physicians, treated him from 1977 until the time of his death. He was Mr. Reynaud’s nephew and a first cousin of all of the parties to this litigation. Although he was apparently close to the entire Reynaud family, he was clearly a disinterested witness insofar as this litigation is concerned. He was very positive in his testimony that although there were brief periods when he could converse reasonably that Mr. Reynaud did not have the mental capacity to make a will as of December 27, 1989. It was his opinion that his incompetency dated back to at least 1988 and perhaps longer. He said he noticed a major change following the automobile accident in 1985. His diagnosis was essentially the same as Dr. Cloyd and he also noted that Mr. Reynaud suffered loss of memory and hostility. He also mentioned Mr. Reynaud’s repeated story that his son E.J. had stolen cattle from the farm, a story that he apparently told to almost everyone he talked with.
“Dr. Fernando Garcia, an internist, treated Mr. Reynaud from April 4, 1989 through January 23, 1990. He testified that his mental condition deteriorated during the time of his treatment and that in his opinion he did not have the mental capacity to make a will as of December 27,1989. It is significant that he treated Mr. Reynaud on December 26, 1989, the day before the will was signed, although he had no specific recollection of any significant factors on that day before which would have been any different from any other time he treated him.
*631 “Dr. Richard Michel treated Mr. Rey-naud for many years prior to March, 1989. He testified that that [sic] he could not make Mr. Reynaud understand, probably could not make him follow his instructions, and he requested him to begin seeing someone else, that is when Mr. Reynaud began seeing Dr. Garcia. Dr. Michel testified that he found a serious mental deterioration following the automobile accident in 1985 and that during the last six months he treated him, which would have been late 1988 and early 1989, that Mr. Reynaud did not have the mental capacity to make a will.
“Dr. Hilda Vallette, one of the defendants and Mr. Reynaud’s oldest child, is a physician who is now retired from active practice. She expressed her opinion that he lacked mental capacity to make a will and in her opinion, since about 1987. As a party to the proceedings who would be adversely affected if the will is valid, her testimony is not disinterested, but it certainly should not be disregarded.
“The only medical expert who testified in favor of mental capacity was Dr. Marion Simpson, Mr. Reynaud’s son-in-law, who is, as I understand it, semi-retired from medical practice. He testified that he never considered Mr. Reynaud to be mentally incompetent. His wife Shirley is a party to the proceeding who stands to gain financially if the will is upheld. His testimony should certainly not be disregarded and is, in somewhat, the same category as that of Dr. Vallette.
“The other four medical experts, Dr. Cloyd, Dr. Ducote, Dr. Garcia and Dr. Michel, are clearly disinterested witnesses who obviously were attempting to honestly assist the Court in its decision, and each testified, to a lack of mental capacity by Mr. Reynaud.”
Francis Reynaud, the decedent’s brother, together with E.J. Reynaud and Dr. Hilda Vallette, two of the decedent’s children, testified that, in their opinion Ellis J. Rey-naud, Sr. was not capable of making a will on December 27, 1989, and for some time prior to that date.
Conversely, Michael Kelly, the decedent’s attorney who prepared the will at issue, felt that the decedent understood the change that was being made from his prior will. In regard to Michael Kelly’s testimony, the trial court’s reasons for judgment state:
“The testimony of Michael Kelly is very important. It must [be] remembered that when he prepared the will he did not have the advantage of having listened to the testimony of several medical experts, including a psychistrist, [sic] nor of having heard the many sad stories of delusions and irrational conduct which I heard, particularly from the testimony of Mr. Francis Reynaud. When Mr. Reynaud requested Mr. Kelly to prepare a will, he knew that he wanted to leave less, or perhaps none his estate, to his four older children and that he wanted to leave more, or perhaps all of his estate, to his three younger children. And when he signed the will, he did it to accomplish that goal.
“However, it is the finding of the Court that this act was based upon delusions that his son had stolen from him and that his three older daughters, along with E.J., were seeking to prevent the younger daughters from sharing in the families [sic] assets and properties to the extent which they deserved. It was a delusion which was totally false and a figment of his imagination and the result of a mental condition which precluded testamentory [sic] capacity.”
The trial court concluded its reasons, as follows:
“I am holding that he acted, based upon a totally false delusion, and that the delusion was caused by the mental disease.... When this will was made on December 27, 1989, this Court finds that Mr. Reynaud was not of sound mind within the meaning of Article 1475 of the Louisiana Civil Code, and was thereby incapable of making a testamentory [sic] disposition. It is the ruling of the Court that the petitioners have proved lack of testamentory [sic] capacity by clear and convincing evidence.”
Under the facts presented, we find no manifest error in the trial court’s ruling *632 that the plaintiffs have proven, by clear and convincing evidence, that Ellis J. Rey-naud, Sr. lacked testamentary capacity on December 27, 1989, the day the will at issue was executed. Therefore, we affirm the judgment of the trial court.
Costs of this appeal to be paid by the defendants-appellants, Shirley Reynaud Simpson, Gail Reynaud Rhea, and Carol Reynaud Largent.
AFFIRMED.