669 So.2d 642 (1996)
Succession of Leonard Selmer DODSON.
No. 27969-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
Nelson, Hammonds & Self by Sydney B. Nelson, for Appellant.
Campbell, Campbell & Johnson by James M. Johnson, for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
BROWN, Judge.
Plaintiff, Myra Dodson, filed this action for declaratory judgment seeking to set aside a *643 1988 will and 1990 inter vivos donation executed by her deceased husband, Leonard S. Dodson. Named as defendants were Leonard Dodson's legal heirs.
Finding that Leonard Dodson lacked the requisite mental capacity, the trial court declared both the will and donation to be invalid and ordered a 1973 will executed by Mr. Dodson to be admitted to probate. Clarice Barnett, one of Mr. Dodson's legal heirs, has appealed.

Facts
Myra and Leonard Dodson were married on January 1, 1940. No children were born of the marriage, nor did the Dodsons adopt. On August 21, 1973, both Leonard and Myra Dodson executed last wills and testaments, leaving to each other their respective estates without reservation. The bulk of Leonard Dodson's estate consisted of separate property inherited from family members.
Beginning in 1985, Myra Dodson experienced a series of strokes and was admitted to the Whispering Pines Nursing Home in Plain Dealing, Louisiana. Thereafter, in 1987, Leonard Dodson joined his wife and they began long-term residency in the nursing home.
Before and after their admission to the nursing home, Clarice D. Barnett, Leonard Dodson's sister, took care of the Dodsons' affairs. Mrs. Barnett became upset when she read her brother's 1973 will and discovered that he left everything to his wife because his property had been inherited from family members. Mrs. Barnett had her son, attorney Jack D. Barnett, draw up new wills for both Leonard and Myra Dodson. The new wills provided for a lifetime usufruct for the surviving spouse while leaving the naked ownership to the decedent's legal heirs. On August 18, 1988, without prior notification or discussion, Mrs. Barnett and her son visited the Dodsons at the nursing home and obtained their signatures on the newly drawn up wills. Jack Barnett acted as notary and had the wills witnessed by two nursing home employees, Yvonne Hartsell Dison and Nancy Dade Hilburn. At this time, Leonard Dodson was 87 years old.
Leonard Dodson had Alzheimer's disease and his physical and mental health rapidly deteriorated following his admission to Whispering Pines in 1987 until he passed away on June 24, 1991.
On September 13, 1993, plaintiff, Myra Dodson filed a petition for declaratory judgment seeking to have the August 18, 1988, will declared null and void for lack of mental capacity. Myra Dodson asked the court to allow the 1973 testament to be probated. Named as defendants were Leonard Dodson's legal heirs.[1] Four of the legal heirs filed an answer seeking to have the 1988 testament probated.
An amending and supplemental petition filed on November 4, 1994, alleged that an inter vivos donation executed by Leonard Dodson on February 16, 1990, should also be declared invalid for lack of mental capacity. In this donation, Leonard Dodson deeded to Clarice Barnett 54 acres of immovable property inherited by him from another sister, Estelle Dodson Johnson.
On the day of trial, defendants filed an exception of no right of action alleging that Myra Dodson had knowledge of Leonard's mental condition and, because of her presence at the will's execution in 1988, had a duty to inform the notary of his alleged incapacity. Because Mrs. Dodson failed to raise the issue of her husband's lack of capacity until more than five years after the will's execution and two years after her husband's death, defendants asserted that she should be precluded from attacking the validity of the will and subsequent donation.
The exception was referred to the merits. The trial court rendered judgment on December 13, 1994, denying the exception and finding that Leonard Dodson lacked the requisite capacity to execute either the August 18, 1988, will or the February 16, 1990, inter vivos donation. Judgment was signed on April 10, 1995. It is from this judgment that Clarice D. Barnett has appealed.

*644 Testimony

Present at the execution of the wills were Myra and Leonard Dodson, Jack and Clarice Barnett, Nancy Hilburn Lowe and Yvonne Hartsell Dison.[2]
Myra Dodson stated that on August 18, 1988, Clarice and her son Jack came to the nursing home and told her that they had some papers that needed to be signed. Mrs. Dodson stated that she and her husband had relied on Clarice to help them with their business affairs for a long time and that Clarice came by the nursing home on a regular basis to visit and take care of what needed to be done.
According to Mrs. Dodson, she signed the papers that Jack brought because Clarice insisted that she do so. Mrs. Dodson stated that prior to that day, there were no discussions concerning new wills. Regarding her husband's condition, Mrs. Dodson testified that he had good and bad days. She did not think Leonard Dodson was capable of executing a will on August 18, 1988.
Jack Barnett, the notary and Leonard Dodson's nephew, testified that both Leonard and Myra Dodson comprehended what they were doing when they executed their wills and seemed pleased with what was done.
Clarice Barnett stated that she and her brother enjoyed a close, loving relationship and that on the date the will was executed, Leonard Dodson knew what he was doing.
Marilyn Turnley, director of nursing at Whispering Pines, asked Nancy Hilburn Lowe to witness the wills. Mrs. Lowe stated that she questioned the Dodsons and ascertained from each that they understood what they were doing. As the nursing home's social services director, Mrs. Lowe testified that she talked with the residents, including Mr. and Mrs. Dodson, on a daily basis and was in a position to make a determination regarding their ability to comprehend the import of their actions.
On the other hand, Mrs. Turnley, director of nursing at Whispering Pines, believed that Leonard Dodson lacked the necessary competence to execute a will. During the summer of 1988, there was only one entry in the nurses' notes indicating that Leonard Dodson was oriented. On cross-examination, Mrs. Turnley, however, conceded that the notes documenting Mr. Dodson's condition around the date that he signed his will seem to show that he was capable at that time.
Dr. Charles L. Payne, Leonard Dodson's treating physician, testified that Mr. Dodson did not have the capacity to execute either the will or the act of donation. Dr. Payne noted that Mr. Dodson had Alzheimer's disease and that his condition varied daily; there were periods when he was oriented and times when he was not.
When questioned about Mr. Dodson's capacity on August 18, 1988, Dr. Payne stated, "... I do not think that man knew what he at that time I don't think he could have known what he was doing." Dr. Payne testified that in his opinion, Mr. Dodson wasn't competent to sign any kind of document that required the exercise of judgment. According to Dr. Payne, Mr. Dodson's condition had deteriorated further by the time he signed the act of donation on February 16, 1990.
Dr. Thomas A. Riley, board certified in the field of internal medicine with a practice limited to gerontology, testified for defendants. Dr. Riley stated that he based his opinion on the testimony, nurses' notes, medical records and Dr. Payne's deposition. Dr. Riley believed that Leonard Dodson most likely understood the implications of executing his will and that he was legally competent when he signed the instrument.
Dr. Riley found significant Dr. Payne's opinion that Mr. Dodson was "doing well" on August 16, 1988, two days before the will was executed. Dr. Riley explained that "the level of mental functioning oftenoften correlates with how healthy or sick they are at a given time." Dr. Riley noted that those in attendance on the date the will was executed would be in the best position to determine the executor's competence.
The only person to testify regarding Mr. Dodson's competency at the time of the act of donation was James Southerland, attorney and notary public. On the date of the donation, *645 Mr. Southerland met with Mr. Dodson to take care of some legal business. Southerland stated that on February 16, 1990, Mr. Dodson had the requisite competency to execute the act of donation.
Defendants' medical expert, Dr. Riley, though unequivocal in his conclusion that Mr. Dodson possessed the requisite capacity to execute a will in 1988, was less certain of his competency on the date the act of donation was executed.

Applicable Legal Principles
In determining capacity, the question is whether the testator/donor understood the nature of the testamentary/donative act and appreciated its effects. Succession of Lyons, 452 So.2d 1161 (La.1984); Succession of Dowling, 93-1902 (La.App. 4th Cir. 2/25/94), 633 So.2d 846.
There is a presumption in favor of mental capacity; the party alleging lack of capacity must overcome this presumption by clear and convincing evidence. Succession of Lyons, supra; Succession of Hamiter, 519 So.2d 341 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1170 (La.1988).
The issue of capacity is a question of fact. The trial court's factual findings will not be disturbed on appeal unless clearly wrong or manifestly erroneous. Succession of Hamiter, supra: Succession of Reynaud, 619 So.2d 628 (La.App. 3d Cir.1993); Succession of Dowling, supra.

Discussion
Appellant, Clarice Barnett, argues that the best evidence of Leonard Dodson's capacity is the daily nurses' notes. Appellant relies upon Succession of Lyons, 452 So.2d 1161 (La.1984), in which the supreme court found that nurses' notes, made contemporaneously with the events being recorded, were more reliable than memories recalled at a later date.
Appellant emphasizes the entries in the nurses' notes that were made just before and right after the will was executed. These entries show that Leonard Dodson was alert, responsive, oriented and not confused.
Appellant concedes that Mr. Dodson's condition had deteriorated by February 1990, when the act of donation was executed, but, again relying upon entries from the nurses' notes, contends that Mr. Dodson was competent to execute the donation.
The following is excerpted from the trial court's written reasons for judgment:
[C]oncerning Mr. Dodson's capacity to execute the August 18, 1988, will, Plaintiff has carried her burden to clearly and convincingly prove her late husband's incapacity.... The testimony of the treating physicians during Mr. Dodson's last few years, taken by deposition, was given great weight by the court. Both convincing and unconvincing evidence was elicited on both sides of the "capacity" question. Even though the burden is Plaintiff's, she has met it easily....
[T]he Court finds that Leonard Selmer Dodson absolutely lacked the requisite capacity when the Inter Vivos Donation was presented to him for execution in 1990. The medical records, medical (including that of Defendants' expert), as well as the credible and non-interested testimony about Decedent's tragic deterioration by 1990, clearly convinces the Court that Mr. Leonard Selmer Dodson lacked sufficient capacity on February 16, 1990, to appreciate the nature and ramifications of said Act of Donation.
The trial court noted the conflict in the testimony and then found credible the testimony of Myra Dodson, Marilyn Turnley and especially Dr. Charles Payne. Where there is, as in the instant case, conflict in the testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989). As noted by the supreme court in Rosell, where there are two permissible views of the evidence, the fact finder's choice can not be manifestly erroneous or clearly wrong.
Sitting as a court of review, we can not judge the trial court's findings of fact as clearly wrong or manifestly erroneous.

*646 Conclusion

For the reasons set forth above, the judgment of the trial court is
AFFIRMED. Costs are assessed to appellant.
NOTES
[1] Leonard Dodson was survived by his wife, Myra Dodson, his sister, Clarice Barnett, three nieces, two nephews and three great-nieces and great-nephews.
[2] Ms. Dison was unavailable to testify at trial.