867 So.2d 921 (2004)
SUCCESSION OF Myra Lee Barnett DODSON.
No. 38,188-CA.
Court of Appeal of Louisiana, Second Circuit.
March 3, 2004.
*922 James M. Johnson, Minden, for Defendant-Appellant, Richard Cecil Dodson and for Defendants-Appellees, James T. Barnett, Mary Dodson Gates, Louise D. Carpenter, Mimi Lynn Dodson Pickett, and Melissa Dodson DeFatta.
Pittard & Jacobs, LLC by Robert Lane Pittard, Bossier City, for Plaintiff-Appellee, Bettye Barnett Smith and for Intervenor/Appellee, Mary Helen Stovall.
*923 Before WILLIAMS, MOORE and LOLLEY, JJ.
LOLLEY, J.
Richard C. Dodson appeals the judgment of the Twenty-Sixth Judicial District Court for the Parish of Bossier, State of Louisiana, in favor of Bettye Barnett Smith ("Smith") and Mary Helen Stovall ("Stovall"). For the following reasons, we affirm.

FACTS
Myra Lee Barnett Dodson ("Mrs. Dodson") died on October 8, 1999. She was a domiciliary of Bossier Parish, Louisiana. Mrs. Dodson was predeceased by her parents, her husband, Leonard Selmer Dodson, and by all of her siblings. She had no children, either biological or adopted, and was only survived by numerous nieces, nephews and other collateral heirs. From the record and according to Smith's petition, it appears that Mrs. Dodson died intestate.[1]
Smith is the niece of Mrs. Dodson, being the daughter of one of Mrs. Dodson's deceased brothers. She was appointed administratrix of Mrs. Dodson's succession. Stovall intervened in these proceedings and is also a niece of Mrs. Dodson by another one of her deceased brothers.
On September 27, 1996, a little more than three years prior to Mrs. Dodson's death, Richard Dodson ("Richard") and James Barnett ("Barnett"), executed a Power of Attorney to act as agents for Mrs. Dodson. Her acceptance of the Power of Attorney is signified by a mark of "X" she purportedly made, being unable to properly sign due to a debilitating stroke. Richard was the nephew of Leonard Dodson, the child of one of his deceased brothers. Barnett was the nephew of Mrs. Dodson, the child of one of her deceased brothers.
Subsequently, on December 30, 1996, the following acts of donations were executed:
1. Donation to the "Barnett nieces and nephews," represented by James Barnett, of one-half interest in a checking account at the First State Bank & Trust Company, Plain Dealing, Louisiana and one-half of all certificates of deposit on the First State Bank & Trust Company, Plain Dealing, Louisiana;
2. Donation to Louise Carpenter (also known as Lydia L. Carpenter) and Richard Dodson of Mrs. Dodson's interest in a 7.975 acre tract of land in Bossier Parish, Louisiana and her interest in a 24 acre tract of land in Bossier Parish, Louisiana;
3. Donation to James Barnett of 59.69 acre tract of land in Bossier Parish, Louisiana;
4. Donation to Louise Carpenter, Richard Dodson, and Mary Gates of Mrs. Dodson's interest in a 57.61 acre tract of land in Bossier Parish, Louisiana and her interest in a 27.14 acre *924 tract of land in Bossier Parish, Louisiana;
5. Donation to Richard Dodson of a house trailer, furniture and farm equipment and tools on the property located in Bossier Parish, Louisiana;
6. Donation to Louise Carpenter, Melissa DeFatta, Richard Dodson, Mary Gates and Mimi Lynn Pickett of one-half interest in a checking account at the First State Bank & Trust Company, Plain Dealing, Louisiana and one-half of all certificates of deposit on the First State Bank & Trust Company, Plain Dealing, Louisiana; and,
7. Donation to Richard Dodson of a 40 acre tract of land in Lafayette County, Arkansas (collectively, the "acts of donation").
The acts of donation were executed by Richard and Barnett as the agents of Mrs. Dodson pursuant to the power of attorney. Mrs. Dodson also appeared in the acts, wherein she executed same by making her mark of an "X." The donations were accepted by the various donees, some outside the presence of the notary and two witnesses who appeared on the acts. Furthermore, the donees were never placed in possession of the purportedly donated property, delivery of which was withheld until after the death of Mrs. Dodson. The acts of donation were not recorded until after the death of Mrs. Dodson.
When Smith was appointed administratrix of Mrs. Dodson's succession, she filed a petition to nullify the acts of donation. Stovall subsequently intervened in the proceedings. After a trial of the matter, the trial court entered its judgment in favor of Smith and Stovall and determined that the acts of donation were invalid due to the incapacity of Mrs. Dodson. This appeal by Richard ensued.[2]

DISCUSSION
On appeal, Richard brings three assignments of error, with the central issue being whether Mrs. Dodson lacked the capacity to validly enter into the acts of donation.
The capacity to donate inter vivos must exist at the time the donor makes the donation. La. C.C. art. 1471. In order to have capacity to make an inter vivos donation, the donor must be able to comprehend generally the nature and consequences of the disposition that he is making. La. C.C. art. 1477. A person challenging the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation. La. C.C. art. 1482. Proving a matter by "clear and convincing evidence" requires establishing that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Robertson v. Cubine, 31,743 (La.App.2d Cir.03/31/99), 731 So.2d 931, citing, Succession of Bilyeu, 28,701 (La.App.2d Cir.09/25/96), 681 So.2d 56, writ denied, 96-2868 (La.01/24/97), 686 So.2d 862.
The issue of capacity is a question of fact. The trial court's factual findings will not be disturbed on appeal unless clearly wrong or manifestly erroneous. Robertson, supra.
The trial court determined in a well-reasoned opinion that Mrs. Dodson lacked the requisite capacity to execute both the power of attorney and the acts of donation.[3] In so doing, the trial court *925 recognized the heavy burden of proof faced by Smith and Stovall to determine Mrs. Dodson incapable of validly executing the subject acts of donation.
The determination regarding Mrs. Dodson's capacity (or lack thereof as the case may be) was based on the testimony heard by the trial court. Specifically, the trial court considered the testimony of various witnesses who believed Mrs. Dodson was both generally competent and also specifically competent to execute the power of attorney and acts of donation. In contradiction to that testimony, the trial court had before it the testimony of Mrs. Dodson's treating physician, who opined that she was not capable of executing such documents. This was the evidence to which the trial court gave the greater weight.
Specifically, Dr. Lawrence Drexler ("Dr. Drexler"), an internist with a specialization in geriatric medicine, appeared before the trial court via his deposition. Dr. Drexler was Mrs. Dodson's treating physician during the time she was admitted to the IHS Shreveport Nursing Home in March 1996 until her death in 1999, a fact which the trial court gave particular weight to. Dr. Drexler testified that at the time of Mrs. Dodson's admission she was diagnosed with senile dementia, which he described as a condition "... where the brain is no longer functioning properly related to changes of aging." Additionally, Dr. Drexler explained that Mrs. Dodson had experienced brain damage as a result of a previous major stroke, as well as subsequent "little tiny multiple small strokes." Significantly (and as the trial court characterized as "amazingly"), on September 17, 1996, (just prior to the execution of the power of attorney), Dr. Drexler had prepared a letter addressed "To Whom It May Concern," wherein he opined that "[Mrs. Dodson] is not competent to make financial decisions due to physical and mental disabilities." He testified that if he wrote and signed such a letter that she was certainly, in his opinion, permanently incapable of making appropriate financial decisions. Dr. Drexler was further asked whether Mrs. Dodson could have experienced bad days and good days, i.e., whether her condition waxed and waned, with specific reference given to the dates when the power of attorney and acts of donation were executed. Dr. Drexler responded that had he thought Mrs. Dodson's condition was inconsistent, he would have requested a psychiatric consultation regarding her competency, which he did not. He also explained that a description on Mrs. Dodson's nursing chart that she was "alert" basically meant that she was responsive when spoken to and not drowsy.
As stated, it was this testimony to which the trial court gave the greater weight and, moreover, which the trial court specifically characterized as "clear and convincing." Such a conclusion was not in error and is clearly within the trial court's province, even though a number of other witnesses testified regarding their opinion that Mrs. Dodson was competent. Where a fact finder's conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Pope v. Prunty, 37,395 (La.App.2d Cir.08/20/03), 852 So.2d 1213, 1218, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137. Of particular significance is Dr. Drexler's letter written prior to any of the events in question, i.e., prior to the execution of the power of attorney or the acts of donation.
*926 The trial court was not in error in relying on Dr. Drexler's testimony, over that of the other witnessesno matter what their numberto determine that Mrs. Dodson lacked the requisite capacity to execute either the power of attorney or the acts of donation. Thus, the trial court was not clearly wrong in concluding that Mrs. Dodson lacked capacity to execute the power of attorney or acts of donation.
Moreover, we seriously question the validity of the acts of donation on a further front. A donation inter vivos is defined as "... an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it." La. C.C. art. 1468 (emphasis added). The testimony at trial was clear that Mrs. Dodson did not intend nor did she divest herself of the property described in the acts of donation at the time those acts were executed; therefore, these donations would not be valid donations inter vivos.
The facts in this case are almost identical to those of a previous case considered by this court, Succession of Simpson, 311 So.2d 67 (La.App. 2d Cir.1975), writ denied, 313 So.2d 839 (La.1975). In that case, Mrs. Simpson had executed an act of donation (in addition to others that were also invalidated for other reasons) of certain immovable property to nine of her twelve children. After her death, eight of the donees sought a declaratory judgment sustaining the donation. The Simpson court observed that the subject act of donation met the legal requirements of form, further noting that Mrs. Simpson appeared to have the intent to donate. However, it was determined that Mrs. Simpson lacked the intent to divest herself of ownership of the property until her death, or in other words, she lacked the intent to divest herself of ownership at the time the donation was purportedly made, as the rule governing donations inter vivos require. The evidence in Simpson indicated that Mrs. Simpson never gave up possession of her property. Thus, because she did not intend to divest herself of her property until her death, the donation was not a valid donation inter vivos, and the donation was declared null and void. Id. at 74.
In the case sub judice, the evidence clearly indicates that Mrs. Dodson did not wish to divest herself of her property until her death. In fact, Richard repeatedly testified that Mrs. Dodson did not intend for the donations to be effective until her death. When questioned specifically whether title to certain property had been transferred prior to Mrs. Dodson's death (i.e., transferred via execution of the act of donation), Richard responded that title was not intended to be "... transferred until such time as it was filed with the court," which was not to occur until after Mrs. Dodson's death, in accordance with her wishes. Here, as in Simpson, the acts of donation, lacking the required divestiture of ownership, were not valid donations inter vivos, and for that reason, as well as for Mrs. Dodson's incapacity to enter into such acts, are null and void.[4]
Finally, a donation inter vivos is only binding "... from the day of its being accepted in precise terms ....," which acceptance may be accepted by a posterior act, also required to be in the form of an authentic act. See La. C.C. art. 1540. Here, the evidence is clear, but for Richard, none of the donees appeared contemporaneously before the notary and two witnesses on the acts, which in and of itself *927 would not be a death blow to these donations had the donees accepted in a subsequent valid act. However, the testimony at trial indicates that the signatures of the other donees were not before a notary and two witnesses, although the acts themselves indicate so on their face. In fact, these donees failed to appear before any notary public and two witnesses, i.e., they did not accept their donations by authentic act as required pursuant to La. C.C. art. 1540. For this added reason, those acts of donation wherein the acceptance was not properly perfected are also null and void for failure of being validly accepted by the respective donees.
Richard also argues that the trial court erred in declaring null the donation to him of Mrs. Dodson's bank account, because he was already listed as a party to the account. In support of that argument he looks to La. R.S. 6:312, which discharges any liability on the part of a financial institution when it pays funds to one of the parties listed on an account. However, Richard has produced no evidence, other than his self-serving testimony, of the fact that any accounts were joint accounts between him, Mrs. Dodson and Barnett. There was admitted into evidence copies of certificates of deposit owned jointly by Mrs. Dodson and Barnett, but Richard was not listed. Barnett also testified that at some point in time he transferred Mrs. Dodson's account from her bank in Magnolia, Arkansas to First State Bank in Plain Dealing, Louisiana, and he stated that the new account was a joint account with his, Mrs. Dodson and Richard's names. Copies of two checks submitted into evidence (written after Mrs. Dodson's death on an account styled "Myra Lee Dodson" and signed by Richard) were signed after her death to pay the filing fees for the acts of donation, but, notably, neither Richard's nor Barnett's name were listed on the checks as account holders.[5] Accordingly, we conclude that this assignment of error is without merit and determine that the respective act of donation was also properly declared null by the trial court.

CONCLUSION
For the forgoing reasons, the judgment of the trial court in favor of Bettye Barnett Smith and Mary Helen Stovall is hereby affirmed, with costs of this appeal assessed to Richard C. Dodson.
AFFIRMED.
NOTES
[1] The record contains a copy of Mrs. Dodson's last will and testament dated August 21, 1973, wherein upon her death she left all of her estate to her husband, Mr. Dodson; however, Mr. Dodson predeceased Mrs. Dodson, and, presumably she never executed a new will. Interestingly, Mrs. Dodson was the petitioner in Succession of Dodson, 27,969 (La. App.2d Cir.02/28/96), 669 So.2d 642, which involved the succession of her husband, Leonard. In that case, a 1988 will by Mr. Dodson was set aside. That will had been executed by Mr. Dodson at the urging of his sister and her son, resulting in Mr. Dodson's property being left to his legal heirs, with Mrs. Dodson having a lifetime usufruct. This was contrary to his prior will, which left the entirety of his estate to Mrs. Dodson. This court determined that Mr. Dodson lacked the mental capacity to execute the subsequent will and found in favor of Mrs. Dodson.
[2] The other named defendants, Barnett, Louise D. Carpenter, Melissa Dodson DeFatta, Mary Dodson Gates and Mimi Lynn Dodson Pickett did not appeal the judgment.
[3] Mrs. Dodson's lack of capacity to execute the power of attorney was not specifically alleged by Smith and Stovall; however, the parties agreed that it was likewise an issue at trial.
[4] For that matter, although a donative intent may have been expressed in the acts of donation (absent a question of Mrs. Dodson's capacity), the donations were not valid donations mortis causa either for lack of proper form. See La. C.C. arts. 1574 et seq.
[5] Although it was never clarified at the trial, these checks were drawn on a Hibernia National Bank account, in Plain Dealing, Louisiana, presumably the successor to First State Bank & Trust Company.