681 So.2d 56 (1996)
SUCCESSION OF Elza Jerome BILYEU.
No. 28701-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
Rehearing Denied October 24, 1996.
*57 Marshall L. Sanson, Monroe, for Appellant, Sheryll L. Harper.
Kneipp & Hastings by Linda Ewbank, Johnny L. Sanders, II, Monroe, for Appellee, Deborah H. Balch.
Before HIGHTOWER and GASKINS, JJ., and PRICE, J. Pro Tem.
HIGHTOWER Judge.
After the trial court declared a statutory will valid, the sole legatee of a prior testament appeals. The current executrix answers, maintaining that the district judge did not properly grant her motion in opposition to a new trial. We affirm.

Facts and Procedural History
Elza Jerome Bilyeu, domiciliary of Ouachita Parish, died testate on March 2, 1994. One month previously, on February 2, 1994, he had executed a statutory will pursuant to the provisions of La. R.S. 9:2442(C). On March 8, 1994, the district court probated the will and issued Letters Testamentary to Deborah Herrington Balch, the named executrix, sole legatee, and long-time friend of Bilyeu.
Earlier, after being admitted to North Monroe Hospital for pulmonary hypertension in December 1993, Bilyeu requested the preparation of a testament naming Balch as sole heir and executrix. Due to the intended testator's fluctuating mental and physical abilities, the attorney drafting the document requested that Balch contact him at a time when Bilyeu felt well enough to execute the will. Because of his continued weakened state, however, Bilyeu desired to complete the process immediately. Thus, the lawyer prepared two testament forms, viz., a statutory will and a statutory will for the physically infirm.
Upon arriving at the hospital and conversing with the testator on February 2, 1994, the attorney concluded that Bilyeu fully comprehended the consequences of what would transpire. After the lawyer questioned the 77-year-old man about his ability to sign his name, and following more than one futile attempt by him to write his name on a pad of paper, Bilyeu placed his mark in various places on the document drawn for the physically impaired.
On April 29, 1994, Sheryll Lynch Harper, the granddaughter of Bilyeu's deceased wife, filed a rule to declare the February 1994 testament null and void. She alleged that *58 the decedent had been "of unsound mind, unable to read and lacked the physical and mental capacity to make a will." Harper further asserted she had been named executrix and sole legatee in a separate will executed by the testator several years earlier.
After hearing the rule on June 30, 1994, the trial court found the testament to be valid. Harper, subsequently securing the services of a different attorney, moved for a new trial grounded upon "newly found evidence," namely, the hospital records of Bilyeu that had not previously been introduced. Balch promptly countered with her own "Motion in Opposition to Motion for New Trial," contending both that the motion for new trial lacked proper form and that the decedent's hospital records did not constitute new evidence. Later, after reviewing the medical records, the trial court denied the new trial. Harper's appeal ensued.

Formal Requirements
Harper argues that, in two respects, the execution of the challenged document did not comply with La. R.S. 9:2442(C), which sets forth the formalities for statutory wills by the physically impaired. Appellant, first, claims that Bilyeu failed to declare or signify that he could not physically sign his name, and, second, complains that the attestation clause states that she had affixed her mark (at the end and on each other separate page of the will), although Bilyeu was a man.
The pertinent provisions read:
La. R.S. 9:2442. Statutory will; form; witnesses
C. If the testator is unable to sign his name because of a physical infirmity, the will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will, that he is unable to sign because of a physical infirmity, and shall then affix his mark at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has declared that he knows how to sign his name but is unable to sign his name because of a physical infirmity and he has affixed his mark at the end and on each other separate page of this will and declared or signified in our presence that this is his last will and testament and in the presence of the testator and each other we have hereunto subscribed our names this ___day of___, 19___."
Inasmuch as Harper filed her claim within three months of the probating of the will, Balch had the burden of proving the authenticity of the testament and its compliance with all of the formal requirements of law. See La. C.C.P. Art. 2932. Even so, the executrix successfully met that challenge.
As indicated, La. R.S. 9:2442(C) requires that the testator declare or signify his physical inability and that the attestation clause reflect this declaration. Succession of Fletcher, 94-1426 (La.App. 3rd Cir. 04/05/95), 653 So.2d 119, review denied, 95-1105 (La. 06/16/95), 655 So.2d 338. Still, in the sense employed by this provision, it is not imperative that the declaration be a verbal statement. Succession of Chopin, 214 So.2d 248 (La.App. 4th Cir.1968). For example, when mental capacity is evident but a testator's ability to speak is impaired, a sign or gesture, such as a nod, a grunt, or a series of eye movements, may be sufficient. Id.
In the case sub judice, the attorney testified that he publicly questioned Bilyeu regarding his ability to sign the document. Subsequently, as corroborated by the witnesses present, Bilyeu made numerous attempts to write his name on a pad of paper. After becoming exasperated, Bilyeu declared in the presence of the attorney and witnesses that he could not sign his name. These facts establish ample compliance with the provisions of La. R.S. 9:2442.
Nor do we find that the incorrect reference to Bilyeu as she and her, in the attestation clause, suffices to nullify the will. After all, the primary purpose of the attestation *59 clause is merely to certify that, at the time of execution of the testament, the statutory formalities have been satisfied. Succession of Porche, 288 So.2d 27 (La.1973). Thus, when the instrument shows that the formalities have been satisfied, technical deviations in the attestation clause should not defeat the dispositive portions of an otherwise valid will. Id. Instead, slight departures in form should be viewed in light of their probable cause. If there exists an indication of the increased likelihood of fraud, the variations would be considered substantial and thus a cause to nullify a will. If not, they should be disregarded. Succession of Guezuraga, 512 So.2d 366 (La.1987). See also Succession of Hogan, 95-1409 (La.App. 4th Cir. 12/28/95), 666 So.2d 684; Succession of Squires, 93-1589 (La.App. 3rd Cir. 06/01/94), 640 So.2d 813.
Certainly, the inclusion of the words she and her in one portion of the attestation clause amounts to nothing more than a typographical error, failing to suggest any likelihood of fraud. We thus find no error in the trial court determination that the formal requirements of La. R.S. 9:2442 had been satisfied.

Testamentary Capacity
Harper also contends that, in holding that the evidence failed to demonstrate that Bilyeu lacked testamentary capacity, the lower court erred. A party alleging lack of testamentary capacity must overcome the presumption of capacity by clear and convincing evidencea burden of proof that requires more than a "preponderance of the evidence" but something less than "beyond a reasonable doubt." Succession of Lyons, 452 So.2d 1161 (La.1984); Succession of Dorand, 596 So.2d 411 (La.App. 4th Cir.1992), writ denied, 600 So.2d 661 (La.1992). Said another way, the existence of the disputed fact must be highly probable, that is, much more probable than its non-existence. Id.; see also La. C.C. Art. 1482.
Appellant's argument relating to testamentary capacity is twofold. First, she contends that the attorney who prepared the will, and acted as notary, failed to ascertain the mental status of Bilyeu on the day in question. Next, she maintains that the medical testimony proved by clear and convincing evidence that Bilyeu did not possess testamentary capacity on February 2, 1994. We fail to find merit in either contention.
The witnesses present at the execution of the will, including the attorney who prepared the testament and served as notary, indicated that Bilyeu appeared coherent. Additionally, the attorney conversed with the testator for approximately fifteen minutes before beginning to explain the will. At more than one point, Bilyeu inquired about the meaning of specific sections of the document, even whether certain provisions would impose liability upon Balch. When directly asked about his wishes, Bilyeu acknowledged that he wanted Balch to be the sole legatee. One subscribing witness, Rachel Buckley, along with others present at the signing of the will, corroborated the reading aloud of the will and the corresponding interrogation that transpired between the attorney and the testator. Buckley further testified that she personally engaged in a conversation with Bilyeu that suggested his clear understanding of the nature of his disposition.
As for appellant's assertions relating to the medical testimony, we are equally unimpressed. Each testifying physician indicated that Bilyeu's mental status produced both alert periods and confused periods. Beyond that, however, none of the doctors witnessed the signing of the will nor could they recall their patient's mental circumstances on February 2, 1994. In sum, contrary to Harper's assertions on appeal, we find the evidence insufficient to rebut the presumption of testamentary capacity.

Answer
Finally, contending that the trial court erred in not granting her motion in opposition to new trial, Balch answers the appeal by requesting an amendment to the judgment in that regard. But recognizing that the eventual denial of Harper's new trial motion rendered this issue moot, we pretermit further discussion of appellee's complaint.

*60 Conclusion

For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWERS, BROWN, GASKINS and PRICE, JJ.
Rehearing denied.