SUCCESSION OF STEPHEN J.
DIBENEDITTO

NO. 22-CA-502

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 12,983, DIVISION "C"
HONORABLE CONNIE M. AUCOIN, JUDGE PRESIDING

October 18, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Robert A. Chaisson, and Stephen J. Windhorst

**<u>AFFIRMED</u>**
    **SJW**
    **SMC**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
SHARON DIBENEDITTO BORGSTEDE
Robert L. Raymond
Gregory A. Miller

COUNSEL FOR DEFENDANT/APPELLEE,
ROSALIE ACHARY DIBENEDITTO
Jarred P. Bradley

**WINDHORST, J.**

Appellant, Sharon DiBeneditto Borgstede, appeals the trial court's May 23, 2022 judgment,[1] finding Stephen J. DiBeneditto's last will and testament to be valid and dismissing with prejudice appellant's petition to annul probated testament and to annul judgment of possession. For the reasons stated herein, we affirm.

**PROCEDURAL HISTORY and FACTS**

Stephen DiBeneditto and Rosalie Achary were married on October 13, 2000. Stephen DiBeneditto, the decedent, passed away on February 22, 2021, in St. Charles Parish and was survived by his spouse Rosalie. The decedent left a Last Will and Testament ("the will") signed and notarized on November 28, 2000. In the will, the decedent left all of his belongs to his wife, Rosalie. The will provided that if Rosalie predeceased the decedent, all of his belongings were to be left to his three children from a prior marriage (*i.e.*, Michael N. DiBeneditto, Steve Todd DiBeneditto, and Sharon DiBeneditto Borgstede)[2] and Keith Michael Lopez,[3] in equal shares.

On March 29, 2021, Rosalie, as the decedent's surviving spouse, filed a petition to probate the decedent's November 28, 2000 will and to be appointed dative testamentary executrix of the will, which the trial court granted.[4] On April 20, 2021, Rosalie filed a "Petition for Possession of Testate Succession Without Administration and for Discharge of Dative Testamentary Executrix." On April 21, 2021, the trial court signed a judgment of possession placing Rosalie in possession the decedent's estate.

---

[1] The trial court amended its May 23, 2022 judgment pursuant to La C.C.P. 1918 on May 1, 2023.

[2] It is undisputed that Michael N. DiBeneditto and Todd DiBeneditto predeceased the decedent, and Sharon DiBeneditto Borgstede is the decedent's sole surviving child/descendent.

[3] It is unclear from the record the relationship of Keith Michael Lopez to the decedent. Mr. Lopez is not a child from his first marriage or his marriage to Rosalie, and the decedent did not acknowledge or adopt any children. The affidavit of death, domicile and heirship is signed by Rosalie and Mr. Lopez; however, the affidavit does not state the relationship of Mr. Lopez to the decedent.

[4] The decedent named Victor E. Bradley, Jr., notary and attorney, as the executor of his will. Because Mr. Bradley passed away on August 29, 2019, Rosalie requested she be appointed dative testamentary of the will pursuant to La. C.C.P. art. 3083.

On May 7, 2021, Ms. Borgstede, the decedent's sole surviving child/descendent, filed a "Petition to Annul a Probated Testament and to Annul Judgment of Possession" ("petition to annul"). In the petition to annul, Ms. Borgstede contended that the will was an absolute nullity because it did not comply with the requirements set forth in La. C.C. art. 1577. Rosalie filed an answer to the petition to annul.

On February 17, 2022 at the trial on the merits of the petition to annul, the parties stipulated that (1) the purported will dated November 28, 2000 would be admitted into evidence; (2) Ms. Borgstede is the sole surviving descendent; and (3) Rosalie is the surviving spouse of the decedent and the universal legatee of the decedent under the terms of the purported November 28, 2000 will. The issue before the trial court was whether the will complied with, or was in substantial compliance with, the requirements set forth in La. C.C. art. 1577. On May 23, 2022, the trial court found that the will was valid and dismissed Ms. Borgstede's petition to annul. This appeal followed.

**LAW and ANALYSIS**

By Act 1421 of 1997, the legislature revised and enacted Louisiana Civil Code articles 1574, *et seq*, which eliminated nuncupative and mystic testaments; retained the olographic testament without substantive change; and revised the previous statutory testament, renaming it the notarial testament. La. C.C. art. 1574 expressly recognizes only two forms of testaments: olographic and notarial. These provisions became effective July 1, 1999, prior to the signing of the will in this case.

On appeal, Ms. Borgstede contends that the trial court erred in denying her petition to annul the probated will and the judgment of possession because the will does not comply with the requirements for a notarial will as set forth in La. C.C. art.

1577, *et seq.* By her assignments of error [5] Ms. Borgstede effectively asserts that the will in this case, executed after the 1999 revisions, is in the form of a "Non-Cupative Will" which was "suppressed" by the legislature. Properly stated, she claims that the will is nuncupative in form, which was repealed prior to the execution of the will. Thus, she claims that because the will is neither olographic or notarial, it is invalid.

Ms. Borgstede further argues that the November 28, 2000 will does not satisfy the requirements of a notarial will under La. C.C. art. 1577 because it fails to contain a proper attestation clause by the witnesses. Furthermore, she contends that the will does not contain an attestation clause by the witnesses that "can be stretched" enough to be considered "substantially similar" to that prescribed in La. C.C. art. 1577. She contends that the witnesses do not attest that the decedent signed the will at the end and on each other separate page, nor do they attest to "anything." She asserts that the purported November 28, 2000 will is invalid and, therefore, the order of probate and the judgment of possession are absolute nullities.

The plaintiff in an action to annul a probated testament has the burden of proving the invalidity of the testament, unless the action was instituted within three months of the date the testament was probated. La. C.C.P. art. 2932; Succession of Gendron, 21-14 (La. App. 5 Cir. 06/23/21), 325 So.3d 584, 598, writ denied, 21-1075 (La. 11/23/21), 328 So.3d 79. However, if the action to annul is instituted within three months of the date that the testament was probated, the defendant/proponent of the will has the burden of proving the authenticity of the testament and its compliance with all the formal requirements of the law. La. C.C.P. art. 2932 A; Succession of McKlinski, 21-369 (La. App. 4 Cir. 11/10/21), 331 So.3d

---

[5] Ms. Borgstede's assignments of error are: (1) "A Last Will executed in the form of a Non-Cupative [*sic*] Will by Public Act on November 28, 2000 which does not contain an attestation clause of the witnesses and the notary does not satisfy the requirements of form mandated by La. C.C. art. 1577 such that it is not a notarial will and should be suppressed;" (2) "A Last Will executed in the form of a Non-Cupative [*sic*] Will by public act on November 28, 2000 which does not satisfy the requirements of form mandated by La. C.C. art. 1577 'Requirements of Form' is an absolute nullity, should be declared AS [*sic*] such and suppressed" [emphasis in original]; (3) "An order of probate of a Non-Cupative [*sic*] Will by Public Act executed on November 28, 2000 and the subsequent Judgment of Possession are absolute nullities, should be declared as such and suppressed."

414, 416-417, <u>writ denied</u>, 21-1818 (La. 02/08/22), 332 So.3d 642; <u>Succession of Bilyeu</u>, 28,701 (La. App. 2 Cir. 09/25/96), 681 So.2d 56, 58, <u>writ denied</u>, 96-2868 (La. 01/24/97), 686 So.2d 862.  Because Ms. Borgstede filed her petition to annul probated testament and judgment of possession within three months of the probated November 28, 2000 will, the burden was on Rosalie to prove the authenticity of the will and its compliance with all of the requirements set forth in La. C.C. art. 1577.  We find Rosalie met her burden.

In submitting the matter to the trial court on pre-trial and post-trial memoranda, the parties stipulated to the following undisputed facts: (1) the purported November 28, 2000 will left by the decedent would be admitted into evidence; (2) Ms. Borgstede is the sole surviving child of the decedent; and (3) Rosalie is the surviving spouse of the decedent.  The only issue before this court is the proper application of, and compliance or substantial compliance with, the requirements set forth in La. C.C. art. 1577 as to the undisputed facts in this case.

Questions of law are reviewed under a *de novo* standard of review.  <u>Succession of Harlan</u>, 17-1132 (La. 05/01/18), 250 So.3d 220, 223.

In Louisiana, there are only two forms of testaments: olographic and notarial. La. C.C. art. 1574.  A notarial testament is executed pursuant to the requirements set forth in La. C.C. articles 1577 through 1580.1.  La. C.C. art. 1576; <u>Succession of Pedescleaux</u>, 21-611 (La. App. 5 Cir. 05/11/22), 341 So.3d 1224, 1230.  The will at issue in this case is governed by La. C.C. article 1577, which provides:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner.  If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, **or one substantially similar:** "In our presence the testator has declared or signified that this

> instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____." [Emphasis added.]

If the formalities prescribed for the execution of a testament are not observed, the testament is absolutely null. La. C.C. art. 1573; Succession of Liner, 19-2011 (La. 06/30/21), 320 So.3d 1133, 1137.

The Louisiana legislature adopted the statutory, now notarial, will from the common law to avoid the rigid formal requirements of the civil law. Liner, 320 So.3d at 1137. The validity of a testament should be maintained through the liberal construction and application of the codal articles, instead of a strict interpretation, as long as there is substantial compliance with the codal provisions. Succession of Bruce, 20-239 (La. 01/27/21), 315 So.3d 193, 195; In re Succession of Holbrook, 13-1181 (La. 01/28/14), 144 So.3d 845, 851; Succession of Guezuraga, 512 So.2d 366, 368 (La. 1987). Given the presumption in favor of the validity of testaments, proof of failure to comply with the formalities of testaments must be exceptionally compelling to rebut that presumption. Liner, 320 So.2d at 1137; In re Succession of Holbrook, 144 So.3d at 853. Further, because the purpose of an attestation clause is merely to "evince the facts and circumstances of the confection and execution" of a will, the Louisiana Supreme Court has held the form of an attestation clause is not "sacrosanct." Liner, 320 So.3d at 1137, *quoting* Succession of Morgan, 242 So.2d 551, 552 (1970); See also Succession of Porche, 288 So.2d 27, 29 (1973).

In Liner, 320 So.3d at 1137-1138, the Supreme Court, in examining attestation clauses, stated:

> A cardinal rule of the interpretation of wills is that the intention of the testator as expressed in the will must govern. Soileau v. Ortego, 189 La. 713, 718, 180 So. 496, 497 (1938); see also La. C.C. arts. 1611 and 1612. In service to this rule, the formalities of a notarial will provide a protective function of guarding the testator against the risk of fraud. See Soileau, 189 La. at 718-19, 180 So. at 497; George Holmes, *Testamentary Formalism in Louisiana: Curing Notarial Will Defects through a Likelihood of Fraud Analysis*, 75 La. L. Rev. 511,

517 (2014) ("the protective function is ... most directly tied to testamentary intent" as "evidence of undue fraud or influence indicates that the testator did not truly intend for the document to be his or her will"). However, in guarding against the risk of fraud, courts should not favor the hypothetical over the facts at hand – potentially undermining the very purpose the formalities serve – by "elevating form over function." Holbrook, 13-1181, p. 8, 144 So.3d at 851; Ronald J. Scalise, Jr., *Will Formalities in Louisiana: Yesterday, Today, and Tomorrow*, 80 La. L. Rev. 1331, 1434-35 (2020) ("form requirements are not an end in themselves but only a means to an end" and "should always be viewed by courts as a vehicle which protects the testator ... from imposition, fraud, and undue influence") (internal quotation omitted); Loretta Garvey Whyte, *Donations-Imperfect Compliance with the Formal Requirements of the Statutory Will*, 15 Loy. L. Rev. 362, 365 (1969) ("[i]t was the intention of the legislature to provide a will form which was not complicated by rigid formalities ... and which would be executed without fear that it would be declared null in probate proceedings"). The result for a testator's estate would be the same as if fraud had actually been proven. See Successions of Toney, 16-1534, p. 5 (La. 5/3/17), 226 So.3d 397, 411 (Weimer, J., dissenting); John H. Langbein, *Substantial Compliance with the Wills Act*, 88 Harv. L. Rev. 489, 517 (1976) (by forbidding a will's proponents from proving that no fraud had occurred, the law is made to irrebuttably presume that it had). This is contrary to the legislature's adoption of the "substantially similar" language in the Civil Code, the established liberal interpretative standard in favor of a will's validity, and ignores consideration of whether "the instrument as a whole shows that [the] formalities have been satisfied." Porche, 288 So.2d at 29.

In Guezuraga, this Court emphasized that deviations from the notarial form are evaluated in relation to their effect on the risk of fraud:

> Where the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity. It was the intent of the legislature to reduce form to the minimum necessary to prevent fraud. It is submitted that in keeping with this intent, slight departures from form should be viewed in the light of their probable cause. If they indicate an increased likelihood that fraud may have been perpetrated they would be considered substantial and thus a cause to nullify the will. If not, they should be disregarded.

512 So.2d at 368 (*quoting* Whyte, *supra*, at 371). Unlike the quantitative analysis undertaken in Toney, Guezuraga established that whether a deviation is material or slight is a function of, not independent from, the risk of fraud. Id.; see also Holmes, *supra*, at 538; Scalise, *supra*, at 1349 (commenting that Toney "repudiates the broader language in earlier cases that focused on the risk of fraud and the purposes of the formalities, substituting in its place a narrower doctrine that upholds wills only when deviations from the formal requirements are minor or insignificant"). To the extent Toney stands for the proposition that an aggregate of slight deviations constitute a

material deviation regardless of their cumulative effect on the risk of fraud, it is overruled.

Courts must determine if a notarial will, with all formalities and evidence taken into consideration, reflects the testator was sufficiently protected against the risk of fraud. Holmes, *supra*, at 541. This involves a contextual analysis of the protective function of a will's formalities in light of the document itself. Id. at 538; Guezuraga, 512 So.2d at 368; Porche, 288 So.2d at 29-30 ("[a]ttestation provisions are sufficient which, in conjunction with the testament itself, reasonably indicate that the testament was executed in accordance with the [codal] formalities") (emphasis added and citation omitted); Succession of Bilyeu, p. 3, 28,701 (La. App. 2 Cir. 9/25/96), 681 So.2d 56, 59 ("when the instrument shows that the formalities have been satisfied, technical deviations in the attestation clause should not defeat the dispositive portions of an otherwise valid will"). If the court's analysis reveals an increased likelihood that fraud may have been perpetrated, the deviations are material and cause to nullify the will exists. If not, the deviations are slight and should be disregarded. Guezuraga, 512 So.2d at 368. Whether the deviating language sufficiently protects against the risk of fraud is construed liberally in favor of maintaining the validity of the will. Id.; Holbrook, 13-1181, p. 11, 144 So.3d at 853. Mere allegations of fraud are not outcome determinative.

Accordingly, we review the November 28, 2000 will under the above enunciated principles.

A *de novo* review of the November 28, 2000 will shows that it meets the requirements of the first paragraph of La. C.C. art. 1577. The will was (1) signed by the decedent, three witnesses, and a notary; (2) the decedent signed his name on the bottom of the first page of the will and at the end of the second page before the witnesses and notary; and (3) the decedent clearly declared on the first page of the will, in the second and third paragraphs, that the November 28, 2000 document was his last will and testament.[6]

The crux of Ms. Borgstede's argument is that the will does not contain an attestation clause by the witnesses, nor one substantially similar, as set forth in the second paragraph of La. C.C. art. 1577 as to make the will valid. We disagree.

---

[6] The second paragraph provides: "Stephen J. DiBeneditto . . . declared unto me . . . that he wished me to receive his last will and testament, and he, the said Stephen J. DiBeneditto, testator, dictated to me, this, his last will and testament." The third paragraph provides: "I, Stephen J. DiBeneditto, being of sound mind and wishing to make proper disposition of my property in case of my death, do make and declare this to be my last will and testament, hereby revoking all prior wills I have made."

The decedent's will contains the following:

> This last will and testament of Stephen J. DiBeneditto was dictated by him to me, Notary, in the presence and hearing of the aforesaid witnesses, and the same was reduced to writing by me, Notary, as dictated by the said testator.

> I, Notary, then read the above will to the said testator in the presence and hearing of the aforesaid witnesses, and the said testator declared to me, Notary, and to said witnesses that he is entirely satisfied therewith.

> The whole of this will was received, dictated, written, read and signed by me, Notary, the said testator, and the undersigned witnesses at one time, without interruption and without turning aside to any other act whatsoever.

> Thus done, read and signed in the City of Norco in the State and Parish aforesaid, on this the 28th day of November, A.D., 2000.

The signatures of the decedent/testator, the three witnesses, and Notary followed this attestation. This statement shows that the witnesses were present and heard the entirety of the decedent's last will and testament as it was received, dictated, written, read, and signed by the testator, notary and the witnesses. The will states that the decedent/testator declared his intent that the document would be his last will and testament. It was signed by the decedent/testator on all pages and his declaration and signature were witnessed in the presence of the notary and witnesses at that time. Further, the decedent/testator declared, in the presence of and as signified by the signatures of all parties, including the witnesses, that he was satisfied with the last will and testament.

The attestation clause in this will is not perfect in that the language therein deviates from the language provided by La. C.C. art. 1577 (2), but this deviation is not substantial. It further deviates in that a literal reading shows that the notary attests to the testator's attestation. The notary states what was declared by the testator in the notary's presence and in the presence of the three witnesses. All of them, including the testator, then signed the will.

In considering whether these deviations from statutory form should be disregarded, we first consider whether these deviations increase the probability of

fraud, undue influence, or duress on the testator. We find that this will's deviations of form do not increase these risks. Further, the language and assertions made in the attestation clause satisfy the substance required by La. C.C. art. 1577 (2), and the deviations therefrom are insignificant enough that, in the absence of the risk of fraud and duress, they may be disregarded in favor of carrying out the intent of the testator.

Therefore, upon *de novo* review of the attestation clause, we find the November 28, 2000 will sufficiently demonstrates that the requisite formalities of La. C.C. art. 1577 were met, and significantly, that the decedent/testator was sufficiently protected against the risk of fraud, undue influence, and duress. Moreover, none of the parties have alleged any grounds of fraud or that the decedent/testator was under duress. We conclude that the attestation in the November 28, 2000 will was "substantially similar" to the one required by La. C.C. art. 1577 (2), and that the will was executed in substantial compliance with La. C.C. art. 1577. It is therefore valid.

**DECREE**

For the foregoing reasons, we find the trial court did not err in denying and dismissing Ms. Borgstede's petition to annul with prejudice. Accordingly, we affirm the trial court's judgment.

<u>**AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 18, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-502

### E-NOTIFIED

29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE CONNIE M. AUCOIN (DISTRICT JUDGE)
ROBERT L. RAYMOND (APPELLANT)          JARRED P. BRADLEY (APPELLEE)

### MAILED

FRANK J. ACHARY (APPELLEE)          GREGORY A. MILLER (APPELLANT)
ATTORNEY AT LAW                      ATTORNEY AT LAW
4417 CRAIG AVENUE                    POST OFFICE BOX 190
METAIRIE, LA 70003                   NORCO, LA 70079