979 So.2d 506 (2007)
SUCCESSION OF Henry James WERNER Through Its Duly Qualified and Appointed Provisional Administratrix, Sue Werner
v.
Gloria ZARATE.
No. 2007 CA 0829.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
*507 Joseph A. Prokop, Jr., Baton Rouge, LA, for Plaintiff/Appellee Succession of Henry James Werner.
Dawn N. Guillot, Baton Rouge, LA, Counsel for Defendant/Appellant Gloria Zarate.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
Gloria Zarate appeals a judgment declaring the December 1993 act of donation by Dr. Henry James Werner to Ms. Zarate of Dr. Werner's home to be a nullity. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Ms. Zarate met Dr. Werner, a retired professor at Louisiana State University, in August 1992, and helped him move from a larger home to a smaller one in Baton Rouge. Sometime thereafter, Ms. Zarate *508 also moved into the home. Dr. Werner suffered a massive stroke on December 8, 1993, and was hospitalized. On December 18, 1993, an attorney went to Dr. Werner's hospital room where an act of donation was executed, in which Dr. Werner gave Ms. Zarate his home. Following his stroke, Dr. Werner was transferred from the hospital to a nursing home, where he died on September 29, 1994.
On October 9, 1996, the Succession of Henry James Werner filed a "Petition to Nullify Inter Vivos Donation Due to Donor's Lack of Capacity & Duress and Donee's Fraud & Undue Influence."[1] In its petition, plaintiff asserted that in the fall of 1992, the defendant, Gloria Zarate, became Dr. Werner's live-in housekeeper. Thereafter, relying on Dr. Werner's poor health and dependence on others, defendant concocted and implemented a scheme to obtain the ownership of all of Dr. Werner's property.[2] In particular, plaintiff asserted that defendant caused Dr. Werner to transfer funds from an existing bank to a different bank and open an annuity account, naming defendant as the beneficiary; that defendant systematically cashed Dr. Werner's certificates of deposit, placing the proceeds in the annuity account; that defendant wrote checks on Dr. Werner's accounts without apparent authority; that defendant routinely wrote large checks on Dr. Werner's accounts to herself and her family members; and that following the massive stroke suffered by Dr. Werner on December 8, 1993, defendant caused Dr. Werner to donate his home to her. Plaintiff asserted that at the time of the inter vivos donations, Dr. Werner lacked the capacity to comprehend generally the nature and consequences of the dispositions that he was making, and that the donations were the product of fraud and duress by the defendant.
A bench trial in the matter was held on October 16-18, 2006. In oral reasons for judgment, on October 20, 2006, the trial court determined that there was clear and convincing evidence that on December 18, 1993, Dr. Werner lacked the capacity to donate his house to the defendant. However, the trial court found that there was insufficient evidence to prove fraud, duress and undue influence relating to the other transactions at issue. Accordingly, on December 18, 2006, judgment was rendered ordering that the sale of Dr. Werner's home to the defendant was null and void, and further ordering an accounting of all income and expenses related to the property since Dr. Werner's death. The judgment also dismissed plaintiff's claims for fraud, duress and undue influence, and assessed costs to the defendant.
Defendant appealed, assigning the following as error:
1) The expert testimony upon which the court based its ruling failed to meet the Daubert standards and therefore was inadmissible.[3]
2) The plaintiff failed to sustain its burden to provide clear and convincing evidence that the decedent lacked capacity to donate the home to the defendant.[4]

*509 DISCUSSION
At the outset of trial, defendant challenged plaintiffs expert, Dr. Robert Blanche, a board-certified psychiatrist. A Daubert hearing was conducted, after which the trial court permitted Dr. Blanche to testify regarding Dr. Werner's mental capacity on the date of the act of donation.
On appeal, defendant asserts that "Dr. Blanche's testimony gave no assistance to the Court as it was not based upon a reliable scientific methodology or sufficient facts or data." Defendant asserts that "review of medical records is not an accepted or reliable methodology upon which to base an expert opinion on a deceased person's capacity." Therefore, according to defendant, Dr. Blanche's testimony fails the Daubert test.
When faced with a proffer of expert scientific testimony, the trial court must determine at the outset whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Daubert, 509 U.S. at 592, 113 S.Ct. 2786, 125 L.Ed.2d 469; Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, pp. 12-13 (La.2/29/00), 755 So.2d 226, 234; Bethley v. Keller Const., 01-1085, pp. 5-6 (La.App. 1 Cir.12/20/02), 836 So.2d 397, 402. See also LSA-C.E. art. 702.[5] In fulfilling this gatekeeping role, the trial court must ensure that the proffered evidence is not only relevant, but reliable, by utilizing a flexible approach requiring that consideration be given to factors such as whether the technique can be (and has been) tested, whether it has been subjected to peer review and publication, whether there is a known or potential rate of error, and whether the relevant scientific/expert community generally accepts the technique. Each of these factors may or may not be relevant to the particular inquiry. Daubert, 509 U.S. at 594-95, 113 S.Ct. 2786, 125 L.Ed.2d 469; Bethley, 01-1085 at p. 6, 836 So.2d at 402.
A trial judge has broad discretion in determining whether Daubert's specific factors are reasonable measures of reliability in a particular case. Ultimately, the trial judge's decision to admit or exclude expert testimony is subject to the abuse of discretion standard of review. Corkern v. T.K. Valve, 04-2293, p. 6 (La. App. 1 Cir. 3/29/06), 934 So.2d 102, 106; Bethley, 01-1085 at p. 7, 836 So.2d at 403.
At the Daubert hearing, Dr. Blanche testified that he had years of experience in working with elderly persons with altered mental status. He estimated that he did three to four hundred admissions to geriatric psychiatric units per year for elderly persons with mental status changes. Dr. Blanche testified that in this case he relied on the analysis of the extensive medical records, which he stated were quite detailed through several hospital courses. He also looked at the depositions provided to him, including that of Dr. Carolyn Baker, Dr. Werner's treating neurologist, and Mark Lazarre, the attorney who prepared the act of donation. Dr. Blanche also reviewed financial documents provided to him.
When asked about a psychiatric autopsy, Dr. Blanche testified that it is an accepted *510 psychiatric practice and explained that it is an analysis conducted by the review of medical records to form an opinion about mental capacity. He further stated that he would be present during the trial to hear the testimony of the witnesses as part of the psychiatric autopsy in this case. He also stated that such methodology has been peer reviewed. Dr. Blanche reiterated that the methodology he used is the methodology commonly used, and used in all matters that psychiatrists do in forensic or clinical practice.
After considering the testimony of Dr. Blanche, the trial court stated:
This is a Daubert hearing challenging the methodology and proposed testimony of Dr. Blanche concerning the capacity of Dr. Werner to make donations at certain periods during his life. His testimony is that he was going to make his determination based upon his review of all of the medical records, the deposition testimony of the treating neurologist, Dr. Carolyn Baker. He also testified that he reviewed the depositions of the defendant, Ms. Zarate, who was the caretaker of Dr. Werner, as well as the deposition of Mr. Lazarre, who is the attorney who apparently prepared and notarized the relevant donations.
Article 702 of the Code of Evidence deals with expert testimony. Subpart six under the comments deals with methodology and the Daubert-Foret rule.[6] Psychiatry is a difficult science in that because it is in many extents subjective on the part of the examiner, its testability and rate of error are difficult to assess; but still it has long been recognized as a scientific discipline subject to admissible expert testimony.
The question in this case is what has been referred to as psychiatric autopsy, but is basically just a review of all of the medical records and other pertinent information of a person who is now deceased to try to determine their condition at a certain time.
* * *
And I think in this case based upon these comments, based upon the testimony of the doctor, based upon the second circuit opinion, which specifically found that there was indeed a number of  there had been a number of peer reviewed psychiatric journals establishing this so-called psychological or psychiatric autopsy procedure, that this was an acceptable method.[7] And I find that the testimony of Dr. Blanche on that issue will be allowed. Any objections made, any evidence presented here will go to the weight to be given to that testimony, but the testimony itself will be allowed.
After reviewing the record, we are not convinced that the trial court abused its discretion in allowing Dr. Blanche to testify. Accordingly, defendant's first assignment of error is without merit.
The defendant next asserts that the trial court erred in finding that plaintiff sustained its burden of proof in challenging the donation with clear and convincing evidence that Dr. Werner lacked the requisite capacity.
To have capacity to make a donation inter vivos or mortis causa, a person must be able to comprehend generally the nature and consequences of the disposition that he is making. LSA-C.C. art. 1477. A person who challenges the capacity of a *511 donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos or executed the testament. LSA-C.C. art. 1482 A. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. In re Succession of Crawford, 04-0977, p. 8 (La.App. 1 Cir. 9/23/05), 923 So.2d 642, 647, writ denied, 05-2407 (La.4/17/06), 926 So.2d 511. The issue of capacity is a question of fact. The trial court's factual findings will not be disturbed on appeal unless clearly wrong or manifestly erroneous. In re Succession of Dodson, 38,188, p. 5 (La. App. 2 Cir. 3/3/04), 867 So.2d 921, 924.
In thorough oral reasons for judgment, the trial court recognized the heavy burden of proof necessary to determine that Dr. Werner was incapable of validly executing the act of donation at issue herein. In discussing the testimony of defendant's witnesses, the trial court discounted the testimony of Mr. Lazarre, the attorney, who had never met Dr. Werner before and had no prior contact with Dr. Werner. The trial court recognized that Mr. Lazarre was contacted by defendant and that Mr. Lazarre thought he was representing her. The trial court also noted that in defendant's testimony, she either had a very poor or a very selective memory of what transpired. The court further observed that the witnesses to the act of donation, defendant's sister and brother-in-law, were not called as witnesses. On the other hand, the trial court noted the volumes and volumes of medical records and the very explicit testimony of Dr. Blanche. Dr. Blanche cited specific instances throughout the hospital records and the doctors' records around the time of the donation that made it very clear to him that Dr. Werner did not possess the capacity to comprehend the nature and consequences of the disposition of the property on the date of the donation. The trial court concluded that Dr. Blanche's review of the records and the explanation as to why Dr. Werner was not capable of forming the requisite legal intent and capacity on that date was clear and convincing evidence that Dr. Werner did not have that requisite legal capacity to make a donation of his house on December 18, 1993.[8]
The trial court heard the testimony and weighed the credibility of the witnesses. After a thorough review of the record, we cannot say the trial court was clearly wrong in finding clear and convincing evidence that Dr. Werner lacked the capacity to make the December 18, 1993 donation of his home. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to Gloria Zarate.
AFFIRMED.
NOTES
[1] The petition was filed by the succession, through its duly qualified and appointed provisional administratrix, Sue Werner. Ms. Werner died prior to the trial in this matter. The new succession representative, Robert R. Breland, was substituted as plaintiff.
[2] Plaintiff further asserted that defendant was an illegal alien who fled to Texas following Dr. Werner's death.
[3] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[4] We note that plaintiff did not appeal the trial court's judgment regarding the other transactions at issue.
[5] Louisiana Code of Evidence Art. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
[6] Louisiana adopted the requirements of Daubert in State v. Foret, 628 So.2d 1116 (La. 1993).
[7] The opinion referred to by the trial court is Succession of Pardue, 40,177 (La.App. 2 Cir. 11/8/05), 915 So.2d 415, writ denied, 06-0215 (La.4/28/06), 927 So.2d 284.
[8] Although not the basis of its ruling, we also note that the trial court seriously questioned the validity of the act of donation on other grounds. Citing the Dodson opinion, which referenced C.C. art. 1468 and the definition of a donation inter vivos, the trial court stated:

[W]here the donor lacks the intent to divest [himself] of ownership at the time of the donation and never gave up possession of the property, but only intended for the property to divest upon that person's death, that the donation was not a valid donation inter vivos and was, therefore, null and void.
Here there was a right of habitation given at the same time as the alleged donation. So whether there was a valid donation on those grounds or not might be in question. But that is not the basis for my decision.