# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-635

**JONI LANDRY, INDV. AND IN HER CAPACITY AS
THE DULY APPOINTED ADMINISTRATIX OF THE
ESTATE OF MARY RUTH MILLER**

**VERSUS**

**CRAYTON TIMOTHY HYPOLITE, ET AL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-2086
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Frank Granger**
**1135 Lakeshore Drive, 6th Floor**
**Lake Charles, LA 70601**
**(337) 439-2732**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Joni Landry**

**Van C. Seneca**
**Loftin & LeBlanc, LLC**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, LA 70601**
**(337) 310-4300**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Joni Landry**

**Kelvin G. Sanders**
**418 Desoto Street**
**Alexandria, LA 71315**
**(318) 487-0009**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Crayton Timothy Hypolite**

**Maura Z. Pelleteri**
**Amy S. Malish**
**Pugh Accardo, LLC**
**1100 Poydras St, Suite 3600**
**New Orleans, LA 70130**
**(504) 799-4500**
**COUNSEL FOR DEFENDANT:**
      **The Prudential Insurance Company of America**

**STILES, Judge.**

Plaintiff/Appellee Joni Landry ("Ms. Landry"), individually and in her capacity as administratrix of Mary Ruth Miller's estate, filed a Petition for Declaratory Judgment asking the trial court to declare her the beneficiary of the annuity contract issued by The Prudential Insurance Company of America ("Prudential") for the benefit of Mary Ruth Miller Landry ("Mary"). After a trial on the merits, the trial court rendered judgment on June 2, 2023, declaring that, due to the mental incapacity of Mary, the attempt to change the beneficiary of the annuity from Ms. Landry to Defendant/Appellant Crayton Timothy Hypolite ("Mr. Hypolite") was null and void, and recognizing Ms. Landry as the only beneficiary of the annuity contract retroactive to the initial contract date of April 15, 1994. Prudential was ordered to pay to Ms. Landry all benefits due and owing pursuant to the contract since the date of Mary's death, together with legal interest from the date each payment became due. Prudential was further ordered to pay to Ms. Landry all future benefits as they become due. Mr. Hypolite appeals the trial court's judgment. For the reasons set forth below, we affirm the judgment of the trial court in its entirety.

## FACTS AND PROCEDURAL HISTORY

Mary was involved in an automobile accident on November 2, 1991, in which she sustained serious head trauma resulting in a brain injury. A lawsuit for personal injuries was filed on behalf of Mary on September 24, 1992, seeking damages for her injuries—Suit No. 92-4952, Calcasieu Parish, Fourteenth Judicial District Court.

On May 10, 1994, a Petition for Limited Interdiction was filed—Suit No. 94-2317, Calcasieu Parish, Fourteenth Judicial District Court—asserting that due to the brain injuries sustained by Mary in the November 2, 1991 accident, "she is incapable

of managing certain of her financial affairs and making certain decisions relating to the administration of her estate[.]" A judgment of limited interdiction was rendered on May 17, 1994, declaring Mary a limited interdict under La.Civ.Code art. 389.1.[1] That judgment also appointed Wayne Frey as curator for Mary for the purpose of assisting with the settlement of her personal injury lawsuit in Suit No. 92-4952, arising out of the November 2, 1991 accident.

A second judgment dated May 17, 1994, and filed in the interdiction record—Suit No. 93-2317—authorized Mr. Frey, in his capacity as the limited curator for Mary's estate, to settle Mary's personal injury claim in consideration of the payment of $462,456.00 in cash from The Home Insurance Company, less any necessary expenses and attorney fees, in addition to monthly payments made to Mary according to the following:

1. A five-year certain payment in the amount of $1,000.00 per month, beginning on June 1, 1994;

2. A five-year certain payment in the amount of $1,500.00 per month, beginning on June 1, 1999;

3. A five-year certain payment in the amount of $2,000.00 per month, beginning on June 1, 2004;

4. A payment in the amount of $3,280.84 per month, certain for twenty years and guaranteed for Mary's lifetime, beginning on June 1, 2009, and the last guaranteed payment to be made on May 1, 2029.

---

[1] Louisiana Civil Code Article 389.1 was vacated by the 2000 Interdiction and Curatorship Revision. The provisions for limited interdiction are currently found under La.Civ.Code art. 390, which provides:

> A court may order the limited interdiction of a natural person of the age of majority, or an emancipated minor, who due to any infirmity is unable consistently to make reasoned decisions regarding the care of his person or property, or any aspect of either, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.

The monthly payments outlined in this structured settlement were to be paid through an annuity contract issued by Prudential. Mary's daughter, Ms. Landry, was designated as the beneficiary of the annuity contract should Mary die before the final payment.

At some point after the settlement for her personal injury claim, Mary started a pen pal relationship with Mr. Hypolite while he was incarcerated at Allen Parish Correctional Center. They were married on December 5, 1998, while he was still incarcerated. On December 22, 1998, the beneficiary of the annuity contract was changed from Ms. Landry to Mr. Hypolite. Mary and Mr. Hypolite were divorced pursuant to a judgment granted on May 13, 2014, based on Mary and Mr. Hypolite living separate and apart for more than 365 days, without reconciliation.

Mary died on April 22, 2016. After Mary's death, Ms. Landry contacted Prudential through her counsel advising them of Mary's death and seeking information on her rights as beneficiary to the annuity contract. Prudential informed Ms. Landry that Mr. Hypolite had been designated the beneficiary, effective December 22, 1998.

On May 20, 2014, Ms. Landry filed a Petition for Declaratory Judgment and Injunctive Relief, individually and in her capacity as the duly appointed administratrix of Mary's estate, asking the trial court to declare the designation of Mr. Hypolite as the beneficiary of the Prudential annuity contract invalid because Mary, as a limited interdict, did not possess the mental capacity to execute a change of beneficiary designation. Ms. Landry further asked the trial court to restore her as the beneficiary of the annuity contract. Both Mr. Hypolite and Prudential were named as defendants in Ms. Landry's suit. An order of dismissal was granted on March 10, 2023, dismissing Ms. Landry's claims against Prudential, without

prejudice, and further ordering that the trial court retained jurisdiction over Prudential, per the stipulation entered into by Ms. Landry and Prudential and filed in the record, to enforce Prudential's stipulated agreement to abide by any final judgment ruling on the proper beneficiary of the annuity's monthly death benefits.

A trial on the merits was held on May 8, 2023, after which the trial court found that Mary lacked the capacity to change the beneficiary of the annuity contract from Ms. Landry to Mr. Hypolite. A judgment was signed on June 2, 2023, declaring that due to the mental incapacity of Mary, the attempt to change the beneficiary on Prudential's annuity contract to Mr. Hypolite was null and void, and, therefore, of no effect. It was further ordered that Ms. Landry be recognized as the only beneficiary of the annuity contract, retroactive to the initial contract date of April 15, 1994, and that Prudential pay to Ms. Landry all benefits due and owing pursuant to the annuity contract since the date of Mary's death, together with legal interest from the date each payment became due. Prudential was further ordered to pay to Ms. Landry all future benefits as they become due pursuant to the annuity contract. Mr. Hypolite was ordered to pay all costs of the proceedings, including the expert witness fee of James M. Anderson, M.D., in the amount of $1,050.00.

Mr. Hypolite has appealed the trial court's June 2, 2023 judgment, asserting the following three assignments of error:

(1) The trial court erred in finding that [Mary] lacked the mental capacity in December 1998 to change the beneficiary of her annuity contract with Prudential.

(2) The trial court erred by admitting [] Prudential's business records without a proper foundation.

(3) The trial court erred by admitting the purported records of civil suit 94-2317.

4

**DISCUSSION**

*Mary's Lack of Mental Capacity*

Mr. Hypolite first asserts that the trial court erred when ruling that Mary lacked the mental capacity to decide who would get her annuity payments upon her death, as such a conclusion is clearly not supported by a preponderance of the evidence in the record.

In support of his argument that the trial court erred in finding Mary lacked the mental capacity to change the beneficiary of the annuity contract, Mr. Hypolite refers to the testimony of the two witnesses who testified at the trial on the merits. The first witness to testify at trial was Dr. James Anderson. Dr. Anderson had initially been appointed by the 14th Judicial District Court in 2001 to examine Mary and determine her competency to stand trial for the offenses of Flight from an Officer, Improper Lane Use, and Ran a Red Light.[2] He was called to testify at this trial on the merits by Ms. Landry and accepted as an expert in the field of psychiatry by the trial court. Mr. Hypolite submits that Dr. Anderson testified that despite suffering a traumatic brain injury in 1991, Mary (1) would have reached maximum medical benefit within one year of the injury; (2) things would have slowly come back to her; and (3) when he examined Mary in 2001, she was cognitively impaired but not "mentally retarded." Mr. Hypolite further argues that because Dr. Anderson only interviewed Mary in 2001 and had no prior contact with her, he has no knowledge of Mary's state of

---

[2] Pursuant to the findings of the sanity commission appointed in *State of Louisiana v. Mary R. Hypolite*, Suit No. 8664-01, Calcasieu Parish, Fourteenth Judicial District Court, a judgment was rendered on October 20, 2001, finding that Mary lacked the mental capacity to proceed in the criminal case "because she has a mental disease or defect which renders her incapable of understanding the proceedings against her and assisting in her defense." The judgment suspended the criminal proceedings and committed Mary to the Department of Health and Hospital at Central Louisiana State Hospital in Pineville, Louisiana, "for custody, care and treatment as the law prescribes[.]"

mental capacity in 1998, when she changed the beneficiary of her annuity contract, and could only speculate on her past medical history.

Mr. Hypolite then refers to Ms. Landry's testimony at trial. Ms. Landry was the second and last witness to testify. According to Mr. Hypolite, Ms. Landry testified that (1) Mary bought and maintained a home; (2) took care of her own daily living needs; (3) bought and drove a car; and (4) maintained her own checking account and paid her bills up until the time of her death. He argues that the fact that Mary was able to do all these things demonstrates that she made life decisions on a daily basis. Thus, the trial court's ruling that Mary lacked the mental capacity to decide who should benefit from her annuity upon her death is clearly not supported by a preponderance of the evidence in the record.

In response, Ms. Landry asserts that the evidence adduced at trial overwhelmingly proves that after Mary's automobile accident, including the time during which she changed the beneficiary of her annuity contract to Mr. Hypolite, Mary was incompetent to handle her financial affairs, resulting in her being declared a limited interdict. Ms. Landry first points to the judgment of limited interdiction, which was rendered against Mary on May 17, 1994. That judgment specifically references the duty of the limited curator, Mr. Frey, to assist in settling Mary's claims in her personal injury lawsuit. Ms. Landry also discusses the second judgment rendered that same day, May 17, 1994, which specifically made Mr. Frey the custodian of the funds awarded in the settlement, made him responsible to authorize the annuity contract which is the subject of this litigation, and authorized him to manage other funds placed in trust for Mary. Ms. Landry argues that it is clear that the judgment of limited interdiction was restrictive, limiting Mary's ability to manage her financial affairs and make financial decisions.

Ms. Landry notes that the only evidence introduced by any of the parties indicating a change in the designation of the annuity contract's beneficiary to Mr. Hypolite is a document dated December 22, 1998, entitled "Change in Direction of Payments," produced by Prudential through discovery. None of the parties involved in this litigation introduced any document seeking a change of beneficiary on Mary's behalf by her curator or any such document signed by the court authorizing such a change. While the articles governing interdiction have been amended since Mary's limited interdiction in 1994, Ms. Landry submits that the law has not changed as to the property of the interdict under the authority of the curator—the limited interdict lacks the capacity to make a juridical act involving property under the control of the curator.[3] The purpose of the limited interdiction of Mary was to control the annuity contract, and thus, the annuity contract was placed under the control of Mr. Frey, Mary's curator. Ms. Landry asserts that any change of beneficiary to the annuity contract would have to have been done through a juridical act, and since the annuity contract was under the control of Mary's curator, she lacked the capacity to make any such juridical act.

Ms. Landry submits that proof of Mary's limited interdiction and the fact that the annuity contract was under the authority of the curator is sufficient for a determination that Mary lacked the legal capacity to execute a juridical act necessary to change the beneficiary of her annuity. Nonetheless, Ms. Landry argues that she

---

[3] See La.Civ.Code art. 395, which provides, in pertinent part, "A limited interdict lacks capacity to make a juridical act pertaining to the property or aspects of personal care that the judgment of limited interdiction places under the authority of the curator, except as provided in Article 1482 or in the judgment of limited interdiction." Comment (b) to Article 395 states, "A juridical act is a lawful volitional act intended to have legal consequences. It may be a unilateral act, such as an affidavit, or a bilateral act, such as a contract. It may be onerous or gratuitous." (Citations omitted.)

presented additional evidence at trial of Mary's mental disability through Dr. Anderson's testimony.

As noted above, Dr. Anderson testified that he was appointed by the 14th Judicial District Court to evaluate Mary and determine her competency to proceed to trial on traffic offenses in 2001. He was also accepted as an expert in the field of psychiatry by the trial court in this matter. Mr. Hypolite claims in his argument that Dr. Anderson testified that Mary would have reached maximum medical benefit within one year of her injury, that things would have slowly come back to Mary, and that Mary was not "mentally retarded." In response, Ms. Landry argues that Dr. Anderson's testimony showed that Mary was quite mentally impaired. For instance, he testified that Mary's "mental and physical disorder" was "severe." Ms. Landry specifically points to the questioning of Dr. Anderson regarding whether Mary would have shown any significant improvement over the years:

> Q. So we know that she had an injury in '91 and by '92 or early '93, she should have probably reached her rule-of-thumb recovery, but in '94, she was interdicted, because she still had a serious inability?
>
> A. Obviously, yes.
>
> Q. And in 2001, she had a very serious impairment with a 20 on GAF, so she hasn't improved - -
>
> A. And she was still interdicted according to Mr. Frey.
>
> Q. - - to Dr. Rathmell?[4] But, in your opinion, do you think that she's really significantly improved?
>
> A. There was no reason to believe that after that point of time things would have miraculously improved.
>
> Q. And that point in time where she was interdicted was in '94, seven years before you saw her?

---

[4] Dr. Aretta Rathmell was the second doctor appointed to the Sanity Commission by the trial court in Mary's 2001 criminal case.

A.    That's my understanding.

Ms. Landry also refers to Dr. Anderson's testimony at this trial regarding his 2001 report in the sanity commission proceedings in Mary's criminal case. He testified that, based upon his evaluation of Mary in 2001, he found that she did not understand the nature of her charges, could not assist counsel at all with witnesses, did not understand the possible sentencing or penalties involved, and that she was incompetent to proceed forward at trial. When questioned about Dr. Rathmell's report, Dr. Anderson testified that Dr. Rathmell had come to the same conclusions on Mary's understanding and capabilities.

While Ms. Landry acknowledges that Mary may have had minimal improvement in her mental functioning in the year following the automobile accident, the record includes medical reports from Lake Charles Memorial Hospital, dated October 11, 1993, and a letter from D. Dale Archer, Jr., M.D., dated May 10, 1994, which determine that Mary suffered from a "mental infirmity." Dr. Archer specifically states in his letter, "It is my opinion that [Mary] is not capable of handling her long term financial affairs." Mary was then found to be impaired in 1994 at the time of her limited interdiction. Dr. Anderson then testified at trial that Mary's impairment had not improved significantly when she was evaluated in 2001 by the sanity commission, which found that she was not competent to stand trial on traffic violations. Ms. Landry argues that Mr. Hypolite has not offered any evidence to prove that Mary had somehow regained cognitive ability by December 22, 1998, when the beneficiary of the annuity contract was changed.

Mr. Hypolite has also argued that Dr. Anderson specifically testified that while Mary may have been cognitively impaired, she was not "mentally retarded." Ms. Landry points out, however, that Dr. Anderson testified his interview notes

9

indicated that Mary stated to him, "but I'm not mentally retarded." When pressed as to whether he found Mary to suffer "any form of retardation", Dr. Anderson specified, "No. I - - I didn't think she was mentally retarded. Cognitively impaired, yes, and that's kind of a new definition these days, but the old definition mentally retarded, no." Ms. Landry submits that the statement that Mary was not "mentally retarded" serves no legal purpose and is not dispositive of Mary's legal capacity nor mental infirmity.

In response to Mr. Hypolite's argument that Ms. Landry's own testimony at trial demonstrated that Mary could maintain her daily needs, Ms. Landry notes that while she testified at trial that Mary had owned a home and vehicle and maintained a checking account, she further testified that Mary lost the home to foreclosure, the vehicle was seized, and the checking account was habitually overdrawn. Ms. Landry argues that this testimony clearly indicates that Mary was not capable of handling her financial affairs and reinforces the reason for the limited interdiction. Ms. Landry also refers again to Dr. Anderson's testimony clarifying Mary's limitations:

> Q. Dr. Anderson, we're not talking about activities of daily living, correct?
>
> A. Correct.
>
> Q. We're talking about your ability to reason and do more higher level functioning such as managing your financial affairs and making the decisions that would impact your long-term financial affairs as well as understanding the long-term impacts of any decisions that you make?
>
> A. Yes.
>
> Q. And she didn't have that, did she?
>
> A. Correct.

After hearing all of the testimony and considering the evidence presented at the trial on the merits, the trial court gave the following ruling in open court:

10

**THE COURT:**

Well, the Court is going to find in favor of Ms. Landry. It's established by a preponderance of the evidence that Ms. - - at the time Ms. Hypolite, previously Ms. Miller[5], lacked the mental capacity to manage her long-term financial affairs, including the most significant financial decision of her life, which was to designate a beneficiary to the sole source of support and wealth that she had to pass on. This was established by Dr. Archer at the time of the limited interdiction, confirmed by Dr. Rathmell in her evaluation and treatment of Ms. Miller, and then by Dr. Anderson today who made it abundantly clear that this lady could not handle her affairs. She could live on her own, but apparently even that didn't really work very well.

And she was a victim. She was taken advantage of in a sham marriage by a person who saw an opportunity to benefit from someone who had means to provide funds because, otherwise, the only evidence presented today was that was a complete sham. And that's what happens to people apparently who lack this mental capacity certainly to make big decisions but even logical or illogical, as Dr. Anderson noted, to even marry someone she had only corresponded with in prison, and then they don't have a real marriage. It's a sham.

But the heart of this case is the capacity, the lack of capacity by Mrs. Hypolite. There's a lot of other arguments being made of why this was invalid, but the primary one and the only thing the Court needs to decide is the lack of capacity, and the fact that the beneficiary should never have been changed from Joni Landry to Mr. Hypolite. And that will be the ruling of the Court, and I'll sign that judgment once it's presented per local rules. Okay?

. . . .

**MR. GRANGER:**

- - I just wanted to ask the Court. I think that Prudential is going to require - - and I would - - I believe this is what you ruled, that you're confirming that Joni Landry is the beneficiary so that they can make the payments?

**THE COURT:**

It should - - the attempt to change the direction of payments away from Joni Landry is ruled as null and void and without effect - - . . . - - because of the lack of capacity. It was established as Joni Landry through the help of her curator and administrator, or whatever the

---

[5] The trial judge refers to Mary in his ruling as "Ms./Mrs. Hypolite," which was her name when married to Mr. Hypolite, and "Ms. Miller," which was her maiden name.

designation was for Wayne Frey; and as a matter of law, that has not changed, because the attempt to change it is invalid for a lot of reasons, but the reason the Court is stating is the lack of capacity on behalf of the - - . . . - - settler, or whatever.

As discussed in *Succession of Werner v. Zarate*, 07-0829, p. 7 (La.App. 1 Cir. 12/21/07), 979 So.2d 506, 511, "The issue of capacity is a question of fact. The trial court's factual findings will not be disturbed on appeal unless clearly wrong or manifestly erroneous." Under the manifest error/clearly wrong standard of review, the appellate court may not disturb the findings of the trial court if, after a review of the record, (1) there is a reasonable factual basis for the finding of the trial court, and (2) the record establishes that the finding is not clearly wrong or manifestly erroneous. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So.2d 880 (La.1993). Thus, "the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 882.

The fact that Mary was adjudged a limited interdict after her automobile accident is evidence to this court that she lacked the mental capacity to handle her long-term financial affairs. The purpose of the May 17, 1994 judgment of limited interdiction and corresponding judgment authorizing her curator, Mr. Frey, to settle her personal injury lawsuit was to preserve the funds awarded to Mary pursuant to the settlement and manage any financial affairs specifically associated with the annuity. Thus, per La.Civ.Code art. 395, Mary lacked the capacity to make a juridical act pertaining to the annuity contract, which was property placed under the authority of her curator. Such a juridical act would include a change in the beneficiary of the annuity contract.

The medical evidence introduced through reports and the testimony of Dr. Anderson at trial further supports the conclusion that Mary lacked the mental capacity to make any long-term financial decisions. Dr. Archer's 1994 letter explicitly stated that Mary was incapable of handling her long-term affairs. Furthermore, the 2001 sanity commission in her criminal case found that she was not competent to stand trial for something as simple as traffic citations. Dr. Anderson noted in his sanity commission report, "In my opinion, the defendant's mental condition could deteriorate under the stress of trial." Dr. Rathmell went further in her sanity commission report, stating, "I would hope the Health and Hospitals social worker would allow her into hospital for stabilization and her safety."

Mary's daughter, Ms. Landry testified at trial that, while Mary did at one time own her own home and a car, she lost the house through foreclosure and the car was seized. When shown Mary's checking account statements at trial, Ms. Landry noticed that overdraft fees were routinely included in the statements. We find that Mary's failures to make routine payments on her housing and vehicle, as well as her failure to maintain an adequate amount of money in her checking account to cover expenses, further supports the fact that she lacked the capacity to make financial decisions.

Mr. Hypolite has argued that nothing in the record or at trial shows that Mary was legally or mentally incompetent at the time she changed the beneficiary of the annuity contract in December of 1998. However, we find that, as discussed above, the record is overwhelmingly clear that Mary lacked the legal and mental capacity to make such a financial decision prior to *and* after December 1998. Mr. Hypolite has failed to introduce any evidence or testimony to prove otherwise.

We find that the trial court was not manifestly erroneous or clearly wrong in determining that Mary lacked the capacity to change the beneficiary of the annuity contract from Ms. Landry to Mr. Hypolite.

*Prudential's Business Records/Annuity Contract*

Mr. Hypolite asserts in his second assignment of error that the trial court erred by admitting Prudential's business records as exhibits at trial without the laying of a proper foundation through the testimony of a witness with knowledge of Prudential's recordkeeping. At trial, Mr. Hypolite's counsel objected to the introduction of business records which had been produced by Prudential and which Ms. Landry sought to introduce as evidence, specifically, the application for the Prudential annuity contract. The trial court admitted the documents as exhibits over the objection of Mr. Hypolite's counsel.

Mr. Hypolite argues that these documents fall under the business record exception to the hearsay rule found in La.Code Evid. art. 803(6). He cites *State v. Juniors*, 03-2425 (La. 6/29/05), 915 So.2d 291, *cert. denied*, 547 U.S. 1115, 126 S.Ct. 1940 (2006), for the proposition that before the court can consider whether business records are admissible under La.Code Evid. art. 803(6), a witness with knowledge of the company's recordkeeping must first lay a proper foundation through testimony. The trial court in this case admitted the business records at issue without hearing any such testimony.

Mr. Hypolite submits that Ms. Landry may argue that the documents at issue were already previously filed into the record on March 2, 2023, when they were attached as exhibits to, and identified in, the stipulation between Ms. Landry and Prudential. However, Mr. Hypolite asserts that he was not a party to that stipulation and, thus, it is not binding upon him. He further argues that the stipulation reached

14

the legal conclusion that Mary and Prudential entered into a binding annuity contract pursuant to La.R.S. 22:912, and, as courts are not bound by stipulations of parties purporting to determine legal conclusions, the trial court should have excluded the annuity contract as hearsay. *Johnson v. Acadiana Ry. Co.*, 96-263 (La.App. 3 Cir. 4/16/97), 693 So.2d 226.

In her response, Ms. Landry notes that Prudential initially provided the documents at issue to counsel for both Ms. Landry and Mr. Hypolite in response to discovery requests. As noted by Mr. Hypolite, the documents were also attached as exhibits to the stipulation filed into the record on March 2, 2023. Moreover, Mr. Hypolite was provided the documents in response to the trial court's pre-trial scheduling order.

Ms. Landry refers to La.Code Evid. art. 901(A), which provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "Evidence is admissible if the trial judge is satisfied, after consideration of such factors as the nature of the evidence, the circumstances surrounding its preservation and custody, and the likelihood that it has been tampered with, that the evidence has not in all reasonable probability been changed in any significant respect." *United States v. Coohey*, 11 F.3d 97, 100 (8th Cir. 1993). Mr. Hypolite never challenged the authenticity of the documents submitted by Prudential or claimed they were altered. In the absence of any argument or showing to the contrary, Ms. Landry argues that the trial court was entitled to presume that the persons in possession of the documents acted with integrity and properly discharged their duties when producing the annuity contract. Ms. Landry

also notes that in order for Mr. Hypolite to argue that he is the rightful beneficiary to the annuity contract, he would have to rely on the very same documents.

Finally, Ms. Landry argues that the documents comply with La.Code Evid. art. 901(B)(8)(a)–(c)[6] because their condition does not create suspicion as to their authenticity, they were in a place "where if authentic" they would likely be (in the custody of Prudential), and they were in existence for more than thirty years at the time offered. She asks this court to affirm the trial court's ruling admitting the Prudential documents pertaining to the annuity contract as evidence at trial.

At trial, Mr. Hypolite's counsel, Kelvin Sanders, objected to the admissibility of Prudential's annuity contract as Exhibit P-4, arguing that a proper foundation needed to be laid before a business record could be admitted. The trial judge questioned why Mr. Sanders would object to the admission of the annuity contract, stating, "Some things aren't in dispute, and the fact that there's an annuity contract with Prudential would seem to be a fact not in dispute." Ms. Landry's counsel, Frank Granger, then argued that "this is not a document offered to prove the matter asserted." The trial judge agreed, stating, "Yeah. It simply sets the foundation for the issues in the case, which is fighting over the annuity payments. So there's no point in objecting to proof that, yes, there is a Prudential contract. That's an issue not in dispute. So P-4 is admitted."

---

[6] Louisiana Code of Evidence Article 901(B)(8) provides:

Ancient documents or data compilation. Evidence that a document or data compilation, in any form:

(a) Is in such condition as to create no suspicion concerning its authenticity;

(b) Was in a place where it, if authentic, would likely be; and

(c) Has been in existence thirty years or more at the time it was offered.

"A trial court's decision on the admissibility of evidence is subject to the abuse of discretion standard." *Menard v. Holland*, 05-353, p. 7 (La.App. 3 Cir. 12/30/05), 919 So.2d 810, 815, *writ denied*, 06-0649 (La. 5/26/06), 930 So.2d 29. As such, "the trial court has vast discretion in deciding the admissibility of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." *Whitehead v. Kansas City S. Ry. Co.*, 99-896, p. 11 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, 219, *writ denied*, 00-0209 (La. 4/7/00), 759 So.2d 767.

Applying this standard of review to the issue at hand, we cannot say that the trial court abused its discretion when admitting the Prudential annuity contract as an exhibit at trial. Mr. Hypolite had been provided with the annuity contract prior to trial through discovery and the pre-trial process. He never challenged the authenticity of the annuity contract. Furthermore, the annuity contract itself was never at issue in this litigation. The issue has always been whether Mary possessed the legal and mental capacity to change the beneficiary to the annuity contract. Without an annuity contract, there can be no beneficiary to the annuity contract. As the trial court stated at trial, the annuity contract simply sets the foundation for the issues in the case, so there is no point in objecting to proof that the there is a Prudential annuity contract. "That's not an issue in dispute."

For these reasons, we find that the trial court did not abuse its discretion in allowing the Prudential annuity contract to be admitted as evidence at trial. This assignment of error is denied.

### *Recreated Record of Interdiction Suit*

In his final assignment of error, Mr. Hypolite asserts that the trial court erred when it admitted into evidence at trial the purported records of civil suit 94-2317, the interdiction suit.

Upon Mary's death and the start of this litigation to determine the beneficiary to Mary's annuity contract, Ms. Landry attempted to retrieve the record in which Mary had been adjudged a limited interdict—Suit No. 94-2317, Calcasieu Parish, Fourteenth Judicial District Court. However, she was told by the Clerk of Court for Calcasieu Parish that the suit record had been missing from its office since 2006 and no one could identify the person who last checked out the record. On November 4, 2020, Ms. Landry filed a Petition for Writ of Mandamus to Calcasieu Parish Clerk of Court to Recreate Suit Record, asserting that suit record 94-2317 should be considered lost and/or destroyed and the recreation of the suit record was necessary for the court to resolve the outstanding lawsuit concerning the change in beneficiary of the annuity contract in Suit No. 2016-2086.

After a contradictory hearing on January 13, 2021, the trial court ordered "that the excerpt copies of the original petition, pleadings and citations be reinstated and the Court declares the copies of same have the same effect as if the originals had never been lost or misplaced." In an affidavit dated January 27, 2021, and filed in the record on February 3, 2021, the Clerk of Court certified the contents of the civil suit entitled In Re: Interdiction of Mary Ruth Landry born Miller, bearing number 94-2317. A second affidavit executed by the Clerk of Court on May 1, 2023, verified a true and correct copy of the entire record filed in the civil suit entitled the Interdiction of Mary Ruth Landry born Miller, bearing number 94-2317.

A full copy of the reconstructed interdiction proceeding, Suit No. 94-2317, was admitted as exhibit P-2 at the trial of this matter. Mr. Hypolite argues that the trial court erred by admitting the records from civil suit 94-2317 because Ms. Landry failed to comply with the statutes governing the recreation of the suit record and failed to call the Clerk of Court as a witness at trial to verify the record.

Louisiana Revised Statutes 44:301 provides the following, in pertinent part:

Where any original papers appertaining to a suit pending in any district court have been or may hereafter be destroyed by the burning of the courthouse of the parish, or destroyed in any other manner, the suits, together with all papers, pleadings, bonds and other documents filed therein and making part thereof, may be revived and reinstated by either plaintiff or defendant as follows:

(1) By filing with the clerk of court a duly certified copy of the original petition, or by motion in open court, or in chambers, served on the opposite party, which motion shall contain the name and residence of the parties, the nature of the demand and cause of action, and the date of the filing of the original petition and service of citation, as near as can be ascertained, together with a statement of the pleadings had in the suit, orders made and bonds filed, accompanied by an affidavit of the parties, or their attorneys, as to the truth of facts allowed. Upon filing the motion a rule may be taken on the opposite party to show cause, within ten days from the service thereof, why the suit, pleadings, orders of court and bonds should not be reinstated.

A review of the record before us indicates that Ms. Landry complied with all of the procedural requirements outlined in La.R.S. 44:301(1). She filed a Petition for Writ of Mandamus to Calcasieu Parish Clerk of Court to Recreate Suit Record in which she explained the purpose for her request. Attached to her petition is a Verification by which Ms. Landry asserts that the allegations contained in the petition are true. Also attached to the petition is an order scheduling a hearing on January 13, 2021, for the purpose of deciding whether Suit No. 24-2317 should be recreated. That hearing was held on January 13, 2021, after which the trial court ordered the Clerk of Court to recreate the record. See La.R.S. 13:914(B).[7]

---

[7] Louisiana Revised Statutes 13:914(B) provides:

Upon the application of any party in interest, and upon satisfactory proof, which may be adduced in chambers, that any pleading, original document, or judgment has been lost or destroyed, the judge may order that a certified copy reproduced from the films, tapes, disks, or the bound record be substituted for the original. If any pleading, original document, or judgment is lost or destroyed, a certified copy reproduced from the films, tapes, disks, or the bound record may be received in evidence in any court.

Ms. Landry submits that the admissibility of a duplicate is addressed in La.Code Evid. arts. 1003 and 1004. Louisiana Code of Evidence Article 1003 provides:

> A duplicate is admissible to the same extent as an original unless:
>
> (1) A genuine question is raised as to the authenticity of the original;
>
> (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or
>
> (3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.

Mr. Hypolite has not challenged the authenticity of any of the original documents of the interdiction proceedings, nor has he argued that it was unfair to admit a duplicate of the interdiction proceedings at the trial.

Louisiana Code of Evidence Article 1004 further provides, in pertinent part:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
>
> (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]

Ms. Landry argues that she did not lose or destroy the interdiction record; therefore, the recreated interdiction record was admissible at trial.

As noted above, a trial court's decision on the admissibility of evidence is subject to the abuse of discretion standard. We find that the lost interdiction record was correctly reproduced by the Clerk of Court's office. Moreover, the copy of the interdiction record that was introduced as Exhibit P-2 at the trial of this matter included an affidavit from the Clerk of Court verifying that it was a true and correct copy of the entire record from Suit No. 94-2317. We find, therefore, that the trial court did not abuse its discretion when it admitted the recreated interdiction record.

**DECREE**

For the foregoing reasons, we affirm the June 2, 2023 judgment of the trial court. Costs of this proceeding are assessed to Defendant/Appellant, Crayton Timothy Hypolite.

**AFFIRMED.**